In re Guardianship of Messer: Funk, General Guardian, Appellant, vs. Walker, Guardian *ad litem*, Respondent.

*December 7, 1942—January 13, 1943.*

The cause was submitted for the appellant on the brief of *Rogers & Owens* of Portage, and for the respondent on the briefs of *Dorothy Walker* of Portage.

A brief was also filed by *Ralph M. Hoyt* of Milwaukee, as *amicus curiæ*.

MARTIN, J.   Louis Messer was adjudged incompetent by the county court of Columbia county on February 10, 1927. On said date appellant, Charles Funk, was appointed guardian of the person and estate of said Louis Messer.   He thereupon duly qualified and has since acted as such guardian.   On February 18, 1927, the guardian filed an inventory of the assets belonging to the incompetent.   This inventory discloses real estate appraised at $10,000 and personal property appraised at $17,349.38, making the total estate inventoried and

appraised as of February 18, 1927, $27,349.38. The estate originally consisted of a farm appraised at $10,000 and personal property on said farm appraised at $2,848.50. The balance of the estate consisted of certificates of deposit, government bonds, note and mortgage, and cash on hand. Thereafter, the guardian sold the farm for the sum of $12,500, being $2,500 in excess of the appraised value. He sold the personal property on the farm for the sum of $5,452.59, being $2,604.09 in excess of its appraised value.

On January 25, 1928, the guardian filed his first annual account, covering the period from February 15, 1927, to January 6, 1928. Annually thereafter, down to and including the year 1941, the guardian filed his account. The last account filed shows a net balance on hand, January 1, 1942, of $45,372.97. In other words, during the period of the guardianship there has been a net increase in the assets of the estate of $18,023.59.

It appears from the guardian's annual accounts that for the first year of the guardianship the guardian computed his fees on the principal amount received, on the basis of five per cent on the first one thousand, five per cent of the gain on the sale of the farm and personal property in excess of the appraised value, and one per cent on the balance, in addition to certain per diems and for travel. For the years 1928, 1929, and 1930 he took credit for fees on the basis of five per cent on the gross income. His accounts for these years and for the first year were approved and allowed by the court below in the instant proceedings. For the year 1931 the guardian took credit on the basis of five per cent on the amount of money actually received and reinvested by him. For the last ten years the guardian has taken credit in his annual accounts on the basis of one per cent of the gross estate on hand.

Sec. 319.37 (1), Stats., provides:

"Every guardian shall be allowed the amount of his reasonable expenses incurred in the execution of his trust and he shall also have such compensàtion for his services as the court in which his accounts are settled shall deem to be just and reasonable. . . ."

In Wisconsin we have no rigid rule as to the basis òf guardians' fees in handling the estates of wards. Neither the legislature nor this court has fixed a schedule of fees. In each case, depending upon all the facts and circumstances, the court in which the guardian's accounts are settled must determine what fees are just and reasonable.

The difficulty in this case arises from the fact that the court below adopted a rule and determined a fee schedule, instead of making findings based on all the facts and circumstances, what the just and reasonable compensation of the guardian should be. In its opinion, the court said:

"There has been an overcharge on the part of the guardian for his services in connection with said matter;

"That the charges of the guardian for his services to the ward in the first year, as set out in his account in the sum of $665.40, is allowed by the court;

"That the charges of the guardian as set out in the accounts filed for 1928, 1929 and 1930 are approved;

"That the charges set out in all other accounts are disallowed in part, and figured by the court at a straight five per cent basis.

"Whereupon, the court arrives at the conclusion that the total fees of the guardian, outside of per diem, would be $1,856.36, and the court is allowing to the guardian per diem of ten days for each year, and so figuring, concludes that there are ninety days to be figured at the statutory rate of $1.50 per day, or $135; and fifty days to be figured at the statutory rate of $2.50 per day, or $125, making a total of $260 per diem. This added to the fees of five per cent, and for the first year allowed, make a total allowance to the guardian of $2,116.36; and the court does determine that all charges made in the accounts over and above the said five per cent and per diem

allowed are overcharges, and the guardian will not be allowed the same."

It appears from the transcript of the testimony that the court would not permit the guardian to testify as to the reasonableness of his compensation for services rendered, although it appeared he had handled different estates, and at least one receivership. The court cannot arbitrarily fix a fee schedule, and without evidence of the reasonable value of the services rendered determine a just and reasonable compensation. The real issue in this case was not tried below. The fees allowed to executors and administrators and to corporate fiduciaries for like services might properly be taken into consideration in fixing the reasonable value of the services rendered by appellant guardian, but they are not controlling. In Restatement, 1 Trusts, p. 741, sec. 242, it is said:

"In the absence of a statute providing a definite rule fixing the amount of the trustee's compensation, the usual practice is to allow the trustee a percentage of the amount of the annual gross income *and a percentage of the principal.* Where, however, under the circumstances such percentage would be more or less than a reasonable compensation, the court may vary it. Among the circumstances to be considered in determining the amount of compensation are: (1) The amount and character of the trust property; (2) the extent of the risk and responsibility of the trustee; (3) the character of the services rendered by the trustee; (4) the degree of difficulty in administering the trust; (5) the skill and success of the trustee in administering the trust; (6) the statutory rates of compensation for executors and administrators.

"In so far as compensation is determined upon a percentage basis, the commission upon income is ordinarily upon gross income received by the trustee, and the commission *upon principal* is ordinarily upon the net value of the principal at the time the compensation is fixed."

As to the allowance of a fee of $150 to the attorneys for the general guardian for their services in the instant proceedings, we conclude that this item was properly allowable

under all the facts and circumstances disclosed by the record. There is no basis upon which it can be said that the general guardian did not act in good faith in the discharge of his duties throughout the fifteen years of his services.

Sec. 319.37 (1), Stats., above quoted, provides that every guardian shall be allowed the amount of his reasonable expenses incurred in the execution of his trust. This includes reasonable attorney fees as well as other expenses. Where a guardian acts in good faith, renders his annual account to the court, showing his annual receipts and disbursements, when the reasonableness of his fees for services and expenses is challenged and he is called upon to defend against surcharging his account, and the only issue being the reasonableness of his fees and expenses, he is entitled, as a matter of right, to legal services in his behalf, and entitled to credit therefor in a reasonable sum in his guardianship account.

If the guardian did not act in good faith and was derelict in the performance of his duties, in that situation he should defend his conduct at his own expense. The guardian in the instant case has executed his trust exceptionally well. The reasonableness of the attorney fees is conceded by the guardian *ad litem*. She contends that since the court below surcharged the guardian's account, the trust should not pay the attorney fees.

In view of our conclusion that the record must be remanded to the county court for further proceedings for the reasons stated, we have taken the liberty of indicating not only the issue to be tried, but also matters which the trial court should consider in determining the reasonable value of the guardian's services, including reasonable expenses incurred by the guardian in the administration of his trust.

*By the Court.*—Order and judgment reversed. Cause remanded for further proceedings in accordance with this opinion.

Barlow, J., took no part.