

# In the
# Missouri Court of Appeals
# Western District

|  |  |
|---|---|
| **IN THE MATTER OF**<br>**VIRGIL D. WILLIAMS,**<br><br>    **Respondent,**<br><br>**JANET ROSENAUER,**<br>**ANDREW COUNTY PUBLIC**<br>**ADMINISTRATOR, AS HIS**<br>**GUARDIAN AND CONSERVATOR,**<br><br>    **Respondent,**<br><br>**v.**<br><br>**BETTY LOU WILLIAMS,**<br><br>    **Appellant.** | **WD81613 and**<br>**WD81701**<br><br>**OPINION FILED:**<br><br>**April 16, 2019** |

**Appeal from the Circuit Court of Andrew County, Missouri**
**The Honorable David Lynn Bolander, Judge**

**Before Division Four:**
**Karen King Mitchell, Chief Judge Presiding, Alok Ahuja, and Thomas N. Chapman, JJ.**

Betty Williams appeals from the judgment of the probate division of the Circuit Court of Andrew County denying her motion seeking to remove the public administrator as guardian and conservator for her husband, Virgil Williams, and seeking to appoint herself and her daughter as successor co-guardians and co-conservators. Betty Williams also appeals from the circuit court's judgment allowing the public administrator to collect her attorneys' fees from the estate of Virgil Williams. We affirm the circuit court's judgments.

## Facts & Procedure

In November of 2015, the Circuit Court of Andrew County declared Virgil Williams (Virgil)[1] totally incapacitated and disabled as a result of Alzheimer's-related dementia, alcohol abuse, and poor short-term memory. At that time, the circuit court had before it competing petitions for the appointment of a guardian and conservator: one filed by Virgil's wife, Betty Williams (Betty); one filed by Virgil's son, Ricky Williams (Ricky), and daughter-in-law, Linda Williams (Linda); and one filed by Virgil's other son, Jeffrey Williams (Jeff). Betty requested that the public administrator be appointed to serve as Virgil's guardian and conservator; Jeff requested that he be appointed to serve in that role; and Ricky and Linda petitioned to be appointed as co-guardians and conservators. After hearing the evidence, the circuit court appointed Ricky and Linda to serve as co-guardians and conservators for Virgil.

In January of 2016, Ricky died. Thereafter, while Linda served as his sole guardian and conservator, Virgil was placed in Oak Pointe of Kearney Senior Living skilled nursing facility. Virgil's daughter, Kim Bauman (Bauman), then petitioned the circuit court for Linda's removal and filed an application to be appointed as his guardian and conservator. While Bauman was not appointed, Virgil's family members arrived at a compromise wherein (1) Virgil would be moved to the Shady Lawn nursing facility in Savannah, Missouri; (2) Linda would be removed from her role as his guardian and conservator; and (3) the public administrator would be appointed to serve as his guardian and conservator.

---

[1] Because many of the people involved in this case share the same surname, we refer to those individuals by their first names. We do so only for ease of reading and to facilitate an understanding of the issues. No disrespect is intended to any person.

In September of 2016, Linda was removed and the public administrator, Janet Rosenauer (Rosenauer), was appointed as Virgil's successor guardian and conservator. In September of 2017, Betty filed a motion in the circuit court alleging, among other things, that Rosenauer had placed unjust limitations on her and Bauman's visitation with Virgil and prevented her from obtaining Virgil's medical information or participating in his medical decision making. The motion requested that Rosenauer be removed as Virgil's guardian and that Betty and Bauman be appointed as co-guardians. On the same day, Betty filed a separate motion to terminate Rosenauer as Virgil's conservator, alleging as the basis for this motion that Rosenauer had mismanaged and failed to protect and preserve Virgil's funds and assets. This motion also requested that Betty and Bauman be appointed as co-conservators.

A trial was held on Betty's motions in November of 2017 and January of 2018. Evidence was provided by Virgil's children and children-in-law; a family friend of Virgil and Betty; Shady Lawn's medical staff; Rosenauer; and Virgil's guardian *ad litem*, John Brage. Bauman testified that Rosenauer had limited the number of visits allowed for Virgil's family members and required visits to be supervised; limited the family to one outing with Virgil per family member per month; limited each family member to one ten-minute phone call per day; and ordered the family not to take Virgil to visit his home.

Letters written by Rosenauer were introduced in support of Bauman's testimony. In her letters, Rosenauer explained that Virgil's dementia prevented him from understanding or handling problems and complaints brought to him by his family members. She further explained that overstimulation caused Virgil to become combative and made him try to escape from the nursing home. Rosenauer urged the family to maintain a positive attitude in Virgil's company,

not to complain about other family members, not to complain about Shady Lawn, and not to tell Virgil that he would be returning to his home. She warned that she would "not tolerate people upsetting Virgil."

Rosenauer elicited testimony from Virgil's children and children-in-law regarding a history of dissension among the family members that made the appointment of the public administrator necessary. Linda testified that, following Ricky's death, Betty told Linda that she was not a part of the family and then severed ties with Linda as well as Linda's children and grandchildren. When Linda would not agree to allow Bauman to serve as co-guardian and conservator, Bauman became irate and had to be restrained by Betty. Betty's sale of the family farm to Bauman's children in 2013, rather than to one of Betty's sons who had expressed interest in purchasing it, created hard feelings among the family and contributed to their estrangement.

In his trial testimony, Virgil's guardian *ad litem* noted that Betty needed assistance with her own finances, and recommended that Rosenauer continue to serve as Virgil's guardian and conservator. He did not believe Bauman should serve in that role, as he had "concern about the dynamics between the siblings creating problems down the road…."

At the conclusion of the trial, the circuit court determined that there was insufficient evidence to remove Rosenauer from her position as Virgil's guardian and conservator. The circuit court further found that Rosenauer had incurred attorneys' fees during the course of the litigation involving Betty and allowed these fees to be taxed against Virgil's estate.

Betty timely appeals from the circuit court's judgments denying her motion for Rosenauer's removal and allowing Rosenauer's attorneys' fees to be paid out of Virgil's funds.

4

*Discussion*

Betty makes three points on appeal. She argues (1) that the circuit court erred, because its judgment allowing Rosenauer to continue as Virgil's guardian and conservator was not supported by substantial evidence and was against the weight of the evidence, because the evidence demonstrated that Betty and Bauman were competent to serve as Virgil's co-guardians and co-conservators, and that Rosenauer's continued service in that capacity therefore exceeded her statutory authority as public administrator; (2) that the circuit court's judgment declining to remove Rosenauer as Virgil's guardian and conservator was against the weight of the evidence in that Rosenauer had failed to act in Virgil's best interests; and (3) that the circuit court misapplied the law in allowing Rosenauer's attorneys' fees to be taxed against Virgil's estate. Finding no error, we affirm.[2]

---

[2] In her brief, Rosenauer argues that Betty's motions to remove Rosenauer and to appoint herself and Bauman as successor co-guardians and conservators were not compliant with §§ 475.060 and 475.061. Specifically, Rosenauer argues that the motions did not contain information regarding "the identity, location and estimated values of the incapacitated person's property and consents of those who are willing to serve."

In *In re Dugan*, 309 S.W.2d 145 (Mo. App. 1957) (relied upon by Rosenauer), the Court addressed an application for guardianship that was "so lacking in compliance with section 475.060 as to amount to a failure to give the court jurisdiction." *Id*. at 449. However, the Court was careful to note that it did not "intend to hold that every failure to dot an *i* or cross a *t* would necessarily be fatal to such an application," but only that the application should "present such sufficient facts as would permit the court to determine its jurisdiction to proceed…." *Id*.

Betty's motions not only sought her and her daughter's appointment, they also sought Rosenauer's removal. Motions for removal of a guardian or conservator are not governed by §§ 475.060 and 475.061. Thus, even were we to conclude that Betty's motions were "so lacking in compliance with section 475.060 as to amount to a failure to give the court jurisdiction," a finding we do not make, this would still not dispose of the issue of whether Rosenauer should have been removed from her role as Virgil's guardian and conservator. Clearly the circuit court had jurisdiction to consider that request.

Furthermore, the deficiencies Rosenauer complains about did not necessarily deprive the circuit court of authority to consider the applications of Betty and Bauman for appointment as Virgil's co-guardians and co-conservators. The annual settlement filed by Rosenauer prior to trial provided the circuit court with a detailed accounting of Virgil's estate. The motions filed by Betty together with the trial testimony provided by Bauman provided the circuit court with evidence of their willingness to serve as his guardians and conservators. Whether the circuit court had authority to consider Betty and Bauman's applications for appointment remains less clear, but, in light of our disposition of the other arguments, is something we need not address.

"A court-tried probate case is reviewed under the standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Under that standard, the probate court judgment will be sustained 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *In re Estate of Schooler*, 204 S.W.3d 338, 342 (Mo. App. W.D. 2006) (quoting *Murphy*, 536 S.W.2d at 32). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id*. at 206.

In determining whether the judgment is supported by substantial competent evidence, "we view the evidence and reasonable inferences from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's credibility determinations." *Estate of Briggs*, 449 S.W.3d 421, 425 (Mo. App. S.D. 2014). "A claim that the trial court erroneously declared or applied the law is reviewed *de novo*." *Id*.

In her first point, Betty argues that the judgment allowing Rosenauer to continue as Virgil's guardian and conservator was not supported by substantial evidence and was against the

weight of the evidence,[3] because Betty and her daughter were competent to serve as Virgil's guardian and conservator, and because Rosenauer's continued service in that capacity therefore exceeded her authority as public administrator.[4] We note that the public administrator "is a public officer and must be presumed to have acted correctly and within the purview of [her] statutory authority." *Vermillion v. Le Clare*, 89 Mo. App. 55, 61 (Mo. App. 1901).

Betty concedes that Rosenauer's appointment was necessary in 2016 in order to facilitate Virgil's transfer from Kearney to Savannah; but argues that Rosenauer's continued appointment is now unnecessary because Virgil no longer drinks alcohol (making it easier for his family to attend to his needs) and because he has been successfully relocated to a nursing facility closer to Betty's and Bauman's homes. Betty argues that (if the guardianship and conservatorship were to continue) she and Bauman would be "competent" to serve, making the service of the Public Administrator unnecessary and beyond the scope of her duties; and that either Betty or Bauman, or both of them, should have been named as Virgil's successor guardian and conservator.

---

[3] "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014) (quoting *In re J.A.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014). Furthermore, a "substantial-evidence challenge…and an against-the-weight-of-the-evidence challenge…are distinct claims." *Id*. at 199 n.11. To be preserved for appellate review, they must be set forth in separate points relied on. *Id*. We review Betty's point *ex gratia*.

[4] Point I of Betty's brief states as follows: "The trial court erred in entering judgment continuing the Public Administrator as the Respondent's Guardian and Conservator, instead of appointing the Respondent's wife, the Appellant herein, or his daughter, because the substantial and competent evidence, and the weight of the evidence, demonstrated that the Respondent's wife and daughter were 'competent to take charge of such estate, or to act as guardian and conservator' and to 'qualify' for such roles, to the end that the Public Administrator's continued appointment was beyond the scope of the [sic] her duty and authority as proscribed [sic] by Section 473.743 R.S.Mo." This point misstates the standard of review, is multifarious, and is difficult to discern. In her Table of Contents of her brief, Betty summarizes her Point I. Though still multifarious, this summary more accurately states the standard of review, and more clearly states her argument, as follows: "The judgment continuing the Public Administrator as Guardian and Conservator is not supported by substantial and competent evidence and is against the weight of the evidence as her appointment is not necessary under Section 473.743 R.S.Mo."

In support, Betty cites § 473.730, which provides the qualifications of a public administrator to take office, and states nothing with respect to whether and when a public administrator may be appointed as guardian or conservator. Since there has been no challenge to Rosenauer's status as the duly elected public administrator, the application of § 473.730 does not support Betty's challenge to Rosenauer's appointment as Virgil's guardian and conservator.

Betty also cites § 473.743,[5] which provides, in pertinent part, as follows:

> It shall be the duty of the public administrator to take into his or her charge and custody the estates of all deceased persons, and the person and estates of all minors, and the estates or person and estate of all incapacitated persons in his or her county, in the following cases:
> ***
> (8) The estates or person and estate of all disabled or incapacitated persons in his or her county who have no legal guardian or conservator, ***and no one competent to take charge of such estate, or to act as such guardian or conservator, can be found, or is known to the court having jurisdiction, who will qualify***….

(Emphasis added).

Betty cites no precedent in support of her position that §§ 473.730 and 473.743 set the standard to determine whether and when to remove the public administrator who had been appointed guardian and conservator and substitute a family member as successor guardian and conservator of an incompetent adult. In fact, case law indicates that, although § 473.743 empowers the public administrator to serve where there is no other guardian or conservator and "no one competent to take charge of the estate or act as guardian will qualify," this language does not state a statutory preference for the appointment of family members. *Roots v. Reid*, 555 S.W.2d 54, 56-57 (Mo. App. 1977) (indicating that § 473.743 did not provide a statutory

---

[5] Statutory references are to RSMo 2016 unless otherwise indicated.

preference for appointment of family members, and that at that time, such preference was based on common law).[6]

While § 475.050 states a preference for relatives over certain unrelated third parties, this preference applies only when "a court is faced with *original applications* for appointment filed by a close adult relative and some other party…." *In re Estate of Davis*, 758 S.W.2d 461, 464 (Mo. App. W.D. 1988). "Once a guardian and conservator is appointed and has given bond," this preference disappears, "and a removal on grounds that are not provided for by statute is unauthorized." *Id*; *see also Oliva v. Oliva*, 113 S.W.3d 269, 273 (Mo. App. W.D. 2003) (when reviewing a trial court's decision whether to remove a guardian and/or conservator, "the question for [the appellate court] is whether th[e] record supports a finding by the Court 'that the guardian or conservator is not discharging his duties and responsibilities as required by this code, or is not acting in the best interests of the ward of [sic] protectee.'") (quoting § 475.082.5).

Rosenauer did not exceed her duties enumerated under §§ 473.743 and 473.730; and those sections do not provide a basis for her removal and the substitution of family members as Virgil's guardian and conservator. Point I is denied.

In her second point, Betty argues that the judgment of the circuit declining to remove Rosenauer was against the weight of the evidence, because she took actions that were not in the best interests of Virgil, in that she failed to appropriately manage some of his assets, and she

---

[6] *Roots,* decided in 1977, examined §§ 473.743 and 475.055, and found that there was no statutory basis for the preference of appointment of family members as guardians and conservators but that there was common law precedent for the appointment of relatives as guardians of minors, and extended this preference to the appointment of guardians and conservators for adults. *Roots*, 555 S.W.2d at 57. Section 475.050 was subsequently enacted to provide "the hierarchy for the trial court to follow in appointing a guardian or conservator." *In re Estate of Korman*, 945 S.W.2d 10, 12 (Mo. App. E.D. 1997). Specifically § 475.050.1 affords some measure of preferential treatment to the incapacitated person's close adult relatives when the circuit court considers whom to appoint to serve as his guardian.

limited interaction between him and his family that caused his residential placement to be more restrictive than necessary. Section 475.082.5 allows the circuit court to remove a guardian or conservator upon finding that he or she "is not discharging his or her duties and responsibilities as required by this code or is not acting in the best interests of the ward or protectee…."[7]

First, Betty complains about Rosenauer's handling of certain assets. Virgil (who is a musician) asked Jeff to return to Virgil one of Virgil's guitars (valued between $3,000 and $5,000). Jeff believed that his sister, Bauman, had pressured Virgil to demand the guitar's return and reported the incident to Rosenauer. Rosenauer instructed Jeff to deliver the guitar to her. Rosenauer kept the guitar for some time, and then returned it to Jeff's possession. At trial, Rosenauer acknowledged that although Jeff had possession of the guitar, it remained the property of a trust owned by Virgil and Betty. No evidence has been presented to suggest that Jeff was authorized to dispose of the guitar or otherwise convert property of the estate; and no harm to Virgil or the estate has been shown.

Betty also argues that Rosenauer failed to act in Virgil's best interest by being dilatory in her efforts to change the listed beneficiaries on Virgil's life insurance policy.[8] Rosenauer (appointed on September 1, 2016) testified at trial that she was made aware of the problem with

_____

[7] Additionally, § 475.110.1 provides for the removal of a guardian or conservator "on the same grounds as is provided in section 473.140…." Section 473.140 provides as follows:

> If any [guardian or conservator] becomes mentally incapacitated or is convicted of a felony or other infamous crime, or becomes an habitual drunkard, or in any manner incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties, or wastes or mismanages the estate, or acts so as to endanger any co-representative, or fails to answer any citation and attachment to make settlement, the court, upon its own motion, or upon complaint in writing made by any person interested supported by affidavit, after notice to [the guardian or conservator] …, shall hear the matter and may revoke the letters granted.

[8] Ricky and Linda Williams, Rosenauer's predecessor guardians and conservators, had designated themselves as the policy's beneficiaries.

10

the policy in December of 2016. In her Motion to Determine Property Interests filed in May of 2017, Rosenauer requested that the circuit court enter an order changing the beneficiary of any life insurance policy held by Virgil, naming the estate as the beneficiary, so that the proceeds could be used to pay his final expenses with the remaining balance to go to his wife, Betty.[9] At the end of the first day of trial (November 13, 2017) the parties agreed that the change in beneficiary should be ordered, and a week later the circuit court entered an order designating the "Estate of Virgil D. Williams" as the beneficiary of his life insurance policy. Therefore it appears that Rosenauer did seek to change the beneficiary, that this was completed, and that the estate suffered no prejudice by any purported delay in doing so.

Finally, Betty argues that the limitations Rosenauer placed on the family's ability to visit with Virgil were overly restrictive.[10] As Virgil's guardian, Rosenauer is "accorded substantial discretion in making decisions relating to [Virgil's] daily life and routine." *Estate of Posey v. Bergin*, 299 S.W.3d 6, 23 (Mo. App. E.D. 2009). Restrictions imposed by a guardian on a ward's visitation and communication privileges with friends and family members may (even though they displease the ward) be in the ward's best interests, particularly where the guardian had "considered a great deal of [the ward's] history" and the restrictions reflect the guardian's "obvious concerns for his health and well being…." *Id*. The circuit court does not err in

---

[9] The circuit court entered an order on Rosenauer's motion on October 19, 2017, but did not address Rosenauer's request concerning Virgil's life insurance beneficiary designation.

[10] While not cited in Betty's brief, § 475.120.3(1) requires the guardian of an incapacitated person to "[a]ssure that [he] resides in the best and least restrictive setting reasonably available."

declining to "interject itself in the details of the day-to-day decisions made by [the guardian]…."
*Id.*[11]

Rosenauer's letters to Virgil's family members reflect her concern that family members were complaining to Virgil about the care he was receiving at the nursing home, and that they were encouraging Virgil to pack up his belongings and implying that he would be going home soon. Rosenauer continuously exhorted the family to remain positive while visiting with Virgil and to refrain from complaining about other family members as Virgil's weakened mental condition prevented him from understanding the family's problems. Rosenauer was particularly concerned about the family's habit of taking Virgil to visit his old home, which she believed caused him to become confused as to why he could not stay there permanently or how he ended up in a nursing home. The restrictions imposed by Rosenauer in the case at bar were similar to those imposed in *Posey*, and appear similarly justified. The evidence presented at trial indicated that the decisions Rosenauer made regarding Virgil's telephone and visitation privileges were calculated to serve his best interests by keeping him content with his living arrangements. The

---

[11] In *Posey*, the ward's daughter (Daughter/guardian) was appointed as his guardian and conservator "as a result of the effects of [the ward's] alcohol dependence and abuse on his physical and mental condition." *Posey*, 299 S.W.3d at 8. The ward had been placed in a residential facility due to his incapacity. *Id*. at 9. While there, Daughter/guardian placed restrictions on his mailing privileges, compiled a list of persons from whom the ward could receive phone calls and to whom the ward was permitted to make phone calls, and also restricted the ward's visitation privileges. *Id*. The ward filed a motion to compel visitation privileges and to remove Daughter/guardian. *Id*. at 8. At the trial Daughter/guardian testified that when the ward had unmonitored contact with his other daughter (Daughter/guardian's sister) and another person described as his "drinking buddy," he became dissatisfied with his living conditions at the residential facility, became angry with Daughter/guardian, and told her that he wanted to go home. *Id*. at 9. The *Posey* Court indicated that some of the restrictions displeased the ward, but found that the restrictions placed upon him by Daughter/guardian had "been made with his best interest in mind." *Id*. at 23. It noted that as the ward's guardian, Daughter/guardian had been invested with "substantial discretion in making decisions relating to [the ward's] daily life and routine." *Id*. The *Posey* court observed that Daughter/guardian had "considered a great deal of [the ward's] history," and that the restrictions demonstrated "her obvious concern for his health and well being…."*Id*. It therefore held that the circuit court did not err in declining to "interject itself in the details of the day-to-day decisions made by" Daughter/guardian. *Id*.

circuit court did not err when it declined to "interject itself in the details of the day-to-day decisions made by" Rosenauer. *Posey*, 299 S.W.3d at 23.

Furthermore, Virgil's guardian *ad litem* (who had served in that capacity in all of the contested proceedings) indicated that he had not observed any mismanagement by Rosenauer. He was not aware of any violations of her responsibility as guardian and conservator, and recommended that she continue to serve in that capacity.

The circuit court did not abuse its discretion by denying Betty's motion to remove the public administrator as Virgil's guardian and conservator. Because we are not firmly convinced that the judgment of the circuit court declining to remove Rosenauer was wrong, the judgment was not against the weight of the evidence. Point II is denied.[12]

In her third point, Betty argues that the circuit court erred in allowing Rosenauer to collect $36,600.58 in attorneys' fees from Virgil's estate.[13] At the hearing on Rosenauer's attorneys' fees, Betty specifically noted that she was "not arguing that the fee of the hourly rate of $200 per hour or even the combined hourly rate of $400 per hour [was] necessarily or inherently unreasonable." On appeal, Betty does not challenge the reasonableness of the fees in light of the services rendered. Therefore the only issues before this court regarding the award of attorneys' fees are whether the amount of the fees was disproportionate to the size of the estate

---

[12] Betty also argues that Rosenauer failed to act in Virgil's best interest by accumulating attorneys' fees in the amount of $36,600.58 over the course of this litigation, which have been taxed against Virgil's estate. Because this argument is essentially duplicative of her third point, we defer addressing it until the analysis under Point III.

[13] Prior to the entry of the circuit court's Judgement for Fees and Costs (from which Betty appeals), the circuit court had entered an order allowing Rosenauer's attorneys' fees to be paid from Virgil's estate in the amount of $7,345.58. Thus, the attorneys' fees that remained to be collected when the judgment (from which Betty appeals) was entered amounted to $29,255.00.

13

(allegedly totaling $40,890.97), and whether the fees were unnecessary in light of the fact that a guardian *ad litem* had been appointed to represent Virgil.

Under § 475.130.1, a conservator is required to "protect, preserve and manage the [protectee's] estate…us[ing] the degree of care, skill and prudence which an ordinarily prudent person uses in managing the property of, and conducting transactions on behalf of, others." Section 475.265 provides that the guardian and conservator may be compensated "for necessary expenses in the administration of his trust, ***including reasonable attorney fees if the employment of an attorney for the particular purpose is necessary***." (Emphasis added).

> Legal services are not infrequently necessary for the protection of the assets of an estate in the hands of an administrator or guardian, and when this is the case it has been repeatedly held in this state that such services are for the benefit of the estate, and that the attorney who rendered them may look to the trustee for his fee, or may present his claim to the probate court, and that that court has jurisdiction to allow the fee as a charge directly against the assets of the estate as expense of administration.

*Grove v. Reynolds*, 71 S.W. 1103, 1104 (Mo. App. 1903). As a corollary to this rule, attorneys' fees may not be collected from the estate "unless it is made to appear affirmatively that the services were necessary, or were of benefit to the estate." *Id*. In determining the amount of attorneys' fees to which the guardian or conservator is entitled, the circuit court is to consider "'all circumstances of the guardianship, including the size of the estate, the productiveness of the estate, the disbursements from the estate, the nature and difficulty of the services performed, and what is a customary charge for similar services in the community.'" *Houston v. Zaner*, 683 S.W.2d 277, 280 (Mo. App. W.D. 1984) (quoting 5 Maus, Probate Law and Practice, § 1969, pp. 319–320).

In *In re Estate of Walker*, 16 S.W.3d 672, 676-678 (Mo. App. E.D. 2000), a conservator who was an attorney challenged a trial court's judgement which did not allow attorney fee rates for non-legal administrative services. In affirming the trial court's award the *Walker* Court indicated:

> Section 475.265 commits the determination of a conservator's compensation to the court. The allowance of fees falls within the court's administrative authority and is within the court's discretion….
>
> Section 475.265 RSMo (1994) provides that the court shall allow such compensation for services to a conservator as it shall deem just and reasonable. This compensation is to be based upon [the factors set forth in *Houston*]….
>
> The court, however, has the ultimate duty to determine under the individual facts of each case what a reasonable and just fee is in light of all of these factors. It, too, is an expert on the nature and value of attorney's fees…. "[C]ourts are themselves experts on the question of attorneys' fees and the judge who personally tries a case and is acquainted with all the issues involved is in a position to fix the amount of attorneys' fees without the aid of evidence."

(quoting *Jafarian–Kerman v. Jafarian–Kerman*, 424 S.W.2d 333, 340 (Mo. App. 1967)).

"[W]e review the court's award of compensation under [§ 475.265] solely for abuse of discretion." *Id*. at 676. "The trial court abuses its discretion when its 'decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Terpstra v. State*, 565 S.W.3d 229, 249 (Mo. App. W.D. 2019) (quoting *Hoeper v. Liley*, 527 S.W.3d 151, 158 (Mo. App. W.D. 2017)) (some internal quotation marks omitted). "'We will not reverse [the award of attorneys' fees] unless we find that the amount was arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration.'" *Id*. at 249-50 (quoting *Ferguson v. Curators of Lincoln Univ.*, 498 S.W.3d 481, 497 (Mo. App. W.D. 2016)).

While the circuit court's judgment regarding attorneys' fees does not refer specifically to evidence bearing upon the factors set forth in *Houston*, Betty did not make a request pursuant to Rule 73.01 for specific findings of fact or conclusions of law. "[U]nless there is such a request and entry, the probate court is presumed to have made its findings in accordance with the decree entered and its judgment will be affirmed under any reasonable theory supported by the evidence." *In re Estate of Newman*, 58 S.W.3d 640, 645 (Mo. App. W.D. 2001) (quoting *Estate of Vickers*, 35 S.W.3d 851, 852 (Mo. App. S.D. 2001)). It is clear that the circuit court had before it evidence that allowed it to assess the factors set out in *Houston*. Prior to trial, Rosenauer filed with the circuit court her annual settlement of Virgil's estate for the period running from September 1, 2016, to September 1, 2017. The settlement provided information concerning the size and productiveness of Virgil's estate, including an itemization of receipts and disbursements for the relevant period. The circuit court also had before it detailed invoices from Rosenauer's attorneys, which allowed it to assess the nature and difficulty of the services performed. After reviewing the time records submitted by Rosenauer's attorneys, the circuit court deducted thirty hours which it deemed to be duplicative.

It is unfortunate that so much of Virgil's estate has been depleted by the costs of the present litigation. However, Rosenauer, as Virgil's guardian, had an affirmative duty to promote and protect his welfare, as well as his estate. §§ 475.120.3(3), 475.130.1. Since the circuit court has concluded (and we have affirmed) that there was no basis to remove Rosenauer as Virgil's guardian, it would certainly be reasonable to expect Rosenauer to hire counsel to defend against the motions seeking her ouster. "We presume an award of attorneys' fees to be correct, and the

16

complaining party has the burden to prove otherwise." *Hill v. City of St. Louis*, 371 S.W.3d 66, 81 (Mo. App. E.D. 2012). Betty has not satisfied this burden.

We also reject Betty's contention that Rosenauer should not be permitted to pay her attorneys' fees from Virgil's funds because Virgil was represented by a guardian *ad litem* in the proceedings below. Betty discusses the duties of a guardian *ad litem* and the authority to pay the guardian *ad litem*'s attorney's fees, but cites no authority that a guardian and conservator's attorneys' fees cannot also be paid from the estate, and we therefore consider that proposition abandoned. *State ex rel. Mid-Missouri Limestone, Inc. v. Cty. of Callaway*, 962 S.W.2d 438, 441 (Mo. App. W.D. 1998) ("An explanation is required for the absence of citations and if no authority exists. Thus, a reviewing court is justified in considering a point abandoned if there is no authority or no explanation as to why authority is not available.") (internal citation omitted). We observe *ex gratia* that the roles of the guardian *ad litem* and the parties' attorneys are distinct. By hiring counsel, Rosenauer was able to more effectively advocate for her retention, which is an outcome that both Rosenauer and the guardian *ad litem* believed to be in Virgil's best interest.

The circuit court's judgment does not "indicate indifference and a lack of proper judicial consideration." *Terpstra*, 565 S.W.3d at 249. We cannot say the circuit court's award of fees was against the logic of the circumstances; or that it was so arbitrary and unreasonable as to shock one's sense of justice. *Id.* The circuit court did not abuse its discretion in its award of Rosenauer's attorneys' fees. Point III is denied.

## *Conclusion*

The judgments of the circuit court are affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Judge

All concur.