

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | |
|---|---|
| IN THE ESTATE OF:<br>JAMES LARRY WASHINGTON, | ) No. ED108357<br>)<br>) Appeal from the Circuit Court<br>) of St. Louis County<br>)<br>) Honorable Ellen Sue Levy<br>)<br>)<br>) FILED: June 16, 2020 |

David B. Washington, a *pro se* litigant, ("Appellant") appeals from the circuit court's October 11, 2019 judgment granting partial fees to Appellant for his role as guardian and conservator of his brother, James L. Washington ("Protectee"). We affirm.

## I. Background

On February 2, 2013, Protectee was found unconscious in his home, where he had lived for more than forty years. In March 2013, his brother, Appellant, filed a Petition for Appointment of Guardian and/or Conservator, which was granted. The letters of guardianship and conservatorship were issued on May 9, 2013. A history of court filings and litigation ensued, both during Protectee's life and after he passed away on April 15, 2018.

Throughout his time as guardian and conservator, Appellant filed several petitions for compensation, which itemized his time and expenses and requested an hourly pay rate of $107. His first three petitions were filed on April 28, 2016, September 14, 2016, and July 12, 2017. On

August 8, 2017, the probate division of the Circuit Court of St. Louis County issued an order for compensation to Appellant of $500 for each of four annual periods for a total of $2000. Appellant appealed from that order, and on its own motion, this Court dismissed the appeal, ED105884, without prejudice because the order was not properly signed. In re the Estate of James Larry Washington, Cause No. 13SL-PR00622, St. Louis County Circuit Court (October 17, 2017). The Court noted, "If an order is entered by a judge on the motion to modify or vacate [its August 8, 2017 order], then Appellant may refile his appeal." On October 5, 2017, the probate judge ordered that the August 8 order be reconsidered because it had not been signed by a judge or commissioner. The deputy commissioner took the request to modify or vacate the August 8 order under submission on October 6, 2017. However, no subsequent order is on the record.

On September 30, 2019, the probate division for the Circuit Court of St. Louis County issued an order dismissing Appellant's claims for compensation filed on May 13, 2019, and August 28, 2019, for the entire period of February 2013 through April 2018. Appellant filed his Notice of Appeal on October 7, 2019, in ED108336, which is the subject of a separate appeal decided simultaneously with this one.

Finally, the current appeal stems from the circuit court's October 11, 2019 order granting fees to Appellant as guardian and conservator in an amount less than requested, based on Appellant's petitions for compensation filed on July 9, 2018, and September 26, 2019. Appellant filed his Notice of Appeal on October 21, 2019, and this appeal follows. Additional facts are discussed as they relate to Appellant's points on appeal.

## I. Discussion

Appellant raises three points on appeal. His first two points similarly allege the circuit court erred in entering orders allowing guardian/conservator fees, although Appellant does not specify to which orders he is referring. Appellant alleges the allowances for guardian/conservator fees by the circuit court were error in that they paid Appellant only a small percentage of the amount he claimed, 7.419% of more than $19,000 requested in his first point on appeal, and 5.633% of more than $38,000 requested in his second point on appeal. Appellant argues the circuit court orders were errors because his claims complied with the requirements of Sections 475.265, 475.120, and 475.130, RSMo.

Third and finally, Appellant alleges the circuit court erred in the judgment against Appellant resulting from the hearing of September 26, 2019, because Appellant complied with the circuit court's order of July 12, 2019, to retain an attorney for the hearing or to be fined, and that Appellant was denied due process under law by being denied entry in the courtroom, to testify and to object under the requirements of both the U.S. Constitution and Missouri Constitution, which provide that "no person shall be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V; Mo. Const. Art. I Sect. 10.

A. Standard of Review

"A court-tried probate case is reviewed under the standard of Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). Under that standard, the probate court judgment will be sustained 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" In re Estate of Schooler, 204 S.W.3d 338, 342 (Mo. App. W.D. 2006) (quoting Murphy, 536 S.W.2d at 32). "Substantial evidence is evidence that, if believed, has some probative force on each fact

that is necessary to sustain the circuit court's judgment." Ivie v. Smith, 439 S.W.3d 189, 199 (Mo. banc 2014). "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." Id. at 206.

In determining whether the judgment is supported by substantial competent evidence, "we view the evidence and reasonable inferences from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's credibility determinations." Estate of Briggs, 449 S.W.3d 421, 425 (Mo. App. S.D. 2014). "A claim that the trial court erroneously declared or applied the law is reviewed *de novo*." Id.

Section 475.265 assigns to the court the determination of a guardian and conservator's compensation. The allowance of fees falls within the court's administrative authority and is within the court's discretion. In re Estate of Walker, 16 S.W.3d 672, 676 (Mo. App. E.D. 2000). Accordingly, we review the court's award of compensation under this statute solely for abuse of discretion. Id., citing In re Switzer, 98 S.W. 461, 465 (1906).

B. Analysis

*Points I and II: Circuit court did not abuse its discretion in awarding fees*

Appellant's first point alleges the circuit court erred in entering an order allowing the guardian/conservator fees of 13.15 hours, $1,407.05, or 7.419% of his requested 177.25 hours, totaling $19,005.64, for services rendered by Appellant, both guardian and conservator, as a result of his "Petition V Claim" filed for guardian/conservator compensation. His second point alleges the circuit court erred in entering an order allowing guardian/conservator fees of 18.75

4

hours, $2,006.25, or 5.633% of his requested 332.87 hours, and compensation of $38,630.21, for services rendered by Appellant, as a result of his "Petition VI Claim" filed for guardian/conservator compensation. Appellant argues these two "claims" complied with the requirements of Sections 475.265, 475.120, and 475.130, RSMo., in that Appellant's claims for services rendered, for protection/benefit of the assets of the estate were for fees as a direct charge of costs and expense of administration to the estate.

Our review of the Legal File reveals that Appellant's petition for guardian/conservator compensation for the period of April 28, 2017 to April 24, 2018, which Appellant filed on July 9, 2018, was considered and the court entered an order granting a fee on October 11, 2019. The same October 11, 2019 order granted a fee for Appellant's petition for guardian/conservator compensation for the period of April 24, 2018, to August 23, 2019, which Appellant filed on September 26, 2019.

The circuit court awarded a total of $3,468.53 and its order states, "the Court notes that Guardian/Conservator was the Protectee's Brother. Where there is a familial relationship between the parties there is the presumption that services are rendered gratuitously," citing Section 475.265 to consider ties of blood in making allowances of compensation to the guardian/conservator, and that "Guardian/Conservator has provided no documentation or evidence to rebut this presumption." The court took judicial notice that Appellant is an accountant by trade, and found "some services rendered to the estate were of a professional nature." In making its award, the circuit court found that no documentation was provided as to the request for reimbursement of expenses for the September 2019 expenses. The circuit court denied the mileage request because Protectee was deceased at the time period for which Appellant was claiming it. The court denied the "filing, process service" expenses because

5

Appellant provided no documentation for such. The court awarded parking and postage expenses from April 2018 through September 2019.

Appellant further argues the circuit court abused its discretion, lacks legal reasoning, and that Appellant and the Protectee do not have a family relationship as a matter of law. Appellant argues that the family relationship is not defined by blood, but is a matter for a jury to determine based on the circumstances, citing Sturgeon v. Estate of Wideman, 608 S.W.2d 140, 142 (Mo. App. E.D. 1980). Appellant claims that his evidence was six years of filing claims for reimbursement, which demonstrate that the circuit court erroneously declared and applied the law because Appellant and the Protectee were separate family heads and did not have the required family relationship to presume Appellant's services were gratuitous. Appellant argues, essentially, that his documentation of hours (177.25 hours for Point I and 332.87 hours for Point II) for his services rendered for the Protectee and his estate, filed as petitions, was Appellant's evidence and that the circuit court therefore abused its discretion in its decision. We disagree.

Section 475.120 provides for the general powers and duties of a guardian, specifically of an incapacitated person as Protectee was, to act in the best interest of the ward, and "to take charge of the person of the ward and to provide for the ward's care, treatment, habilitation, education, support and maintenance; . . ." As Appellant argues, the statute provides that a guardian of an adult ward "is not obligated by virtue of such guardian's appointment to use the guardian's own financial resources for the support of the ward. . . ." Section 475.120.4. Similarly, Under Section 475.130.1, a conservator is required to "protect, preserve and manage the [protectee's] estate ... us[ing] the degree of care, skill and prudence which an ordinarily prudent person uses in managing the property of, and conducting transactions on behalf of, others." Matter of Williams, 573 S.W.3d 106, 117-19 (Mo. App. W.D. 2019).

6

Section 475.265 provides that a guardian/conservator be compensated for his services "as the court shall deem just and reasonable." Moreover, "[a]dditional compensation may be allowed for his necessary services as attorney and for other necessary services not required of a guardian or conservator." Section 475.265. The statute further provides for "necessary expenses" and that these amounts "shall be fixed by the court. . . ." Id. Finally, this section notes that the "court may consider ties of blood, marriage or adoption, in making allowances of compensation to guardians and conservators." Id.

In Houston v. Zaner, the Western District of this Court compared the statute concerning decedents' estate fees, Section 473.153, which required a court to order fees based on a minimum fee schedule, to Section 475.265, the statute governing compensation for guardians and their attorneys, which did not set a minimum fee schedule or set forth a formula for determining their "just and reasonable compensation." 683 S.W.2d 277, 279-80 (Mo. App. W.D. 1984). The Western District determined that the guardian's compensation is to be based upon "all circumstances of the guardianship, including the size of the estate, the productiveness of the estate, the disbursements from the estate, the nature and difficulty of the services performed, and what is a customary charge for similar services in the community." Id. (citing 5 Maus, Probate Law and Practice, § 1969, pp. 319-20); In re Estate of Walker, 16 S.W.3d at 676-77; see also In re Messer's Guardianship, 7 N.W.2d 584, 586 (1943) (citing RESTATEMENT OF TRUSTS § 242 (1935)). Later, this Court further explained that "[f]rom its own files, the proceedings on the case, and its experience in this area, the court could evaluate all of the relevant factors and determine what a reasonable and just fee was for this specific case." In re Estate of Walker, 16 S.W.3d at 677. The Court has the ultimate duty to determine under the individual facts of each case what a reasonable and just fee is in the light of all of the factors. Id. It, too, is an expert on

7

the nature and value of attorney's fees and is not bound by the conservator's evidence of prevailing fees, other attorneys' opinions of what is a reasonable fee, or the consent of the minor's family..Id.

We find instructive to our decision here the Western District's decision in Matter of Williams, 573 S.W.3d 106, 117–19 (Mo. App. W.D. 2019). Although the court discussed the reasonable attorney fees pursuant to Section 475.265 in that case, the same analysis may be applied here for the reasonableness of guardian/conservator fees. In Matter of Williams, the court highlighted the phrase in the statute that one may be compensated "if the employment of an attorney for the particular purpose is necessary." Id. at 117. The court noted the corollary to this rule, that attorneys' fees may not be collected from the estate "unless it is made to appear affirmatively that the services were necessary, or were of benefit to the estate." Id. In determining the amount of attorneys' fees to which the guardian or conservator is entitled, the circuit court highlighted the factors to consider: "'all circumstances of the guardianship, including the size of the estate, the productiveness of the estate, the disbursements from the estate, the nature and difficulty of the services performed, and what is a customary charge for similar services in the community.'" Id. (citing Houston, 683 S.W.2d at 280). "The court, however, has the ultimate duty to determine under the individual facts of each case what a reasonable and just fee is in light of all of these factors. It, too, is an expert on the nature and value of attorney's fees. . . ." Id. In Matter of Williams, the Western District noted that even though the circuit court's judgment did not refer specifically to the evidence bearing on the Houston factors, there was no request for specific findings of fact or conclusions of law pursuant to Rule 73.01, so the court was "presumed to have made its findings in accordance with the decree entered and its judgment will be affirmed under any reasonable theory supported by the

8

evidence.  Id., citing In re Estate of Newman, 58 S.W.3d 640, 645 (Mo. App. W.D. 2001).  The Western District found the circuit court had evidence before it to assess the factors set out in Houston based on the annual settlement of the estate, itemization of receipts and disbursements, detailed invoices and time records from the attorneys, "which allowed it to assess the nature and difficulty of the services performed."  Id.  It held the circuit court's deduction of thirty hours, which it deemed duplicative, was not an abuse of discretion.  Id.

Here, like Matter of Williams, 573 S.W.3d 106, 117-19, the circuit court had before it Appellant's Petition for Compensation for Services as Both Guardian and Conservator, for the period of April 28, 2017 to April 24, 2018, filed on July 9, 2018, which included an itemized breakdown of Appellant's time.  Appellant totaled his time incurred to be 177.25 hours and requested $107 per hour.  Similarly, the circuit court had before it Appellant's Petition for Compensation for Service as Both Guardian and Conservator, including an itemization of Appellant's time for the period of April 24, 2018, to August 23, 2019, which he filed on September 26, 2019.  Appellant totaled this time incurred at 332.87 hours and requested $107 per hour.

First, before analyzing whether Appellant's services as guardian and conservator were "gratuitous" because of a family relationship, we take note of the circuit court's "approved rate" it allows for services rendered by "lay-person" guardians and conservators who are *not* related to the ward/protectee is only $10 per hour.  At that rate, even 177 hours would have earned Appellant an estimated $1,770 and 333 hours would have earned Appellant $3,330, totaling approximately $5,100.  The circuit court awarded a total of $3,468.53.  However, a closer review of Appellant's itemization reveals to this Court that, in addition to Appellant's typical work as a guardian/conservator preparing annual settlements and final settlement reports, Appellant spent

9

66 hours in May 2019 on a "complaint, cause of action against Estate; 4 counts" including "Verified breach of fiduciary duty, Abuse of Control/Discretion; Whit [sic] of Mandamus; Unjust Enrichment; Filed 5/19/19 DBW v. Estate of LJW et al." He spent another 21 hours on a Motion in Opposition to MTD; 36 hours were spent on drafting of a motion for leave to amend Appellant's case No. 19SL-CC01979; and nearly 30 hours were spent on a motion for declaratory/injunctive relief in August 2019. Although Appellant argues he is a professionally licensed stockbroker, insurance broker, real estate broker, paralegal, accountant, and former IRS employee with a BS/BA accountant degree, among other qualifications, we find no evidence that Appellant demonstrated to the circuit court that he deserved a professional rate beyond the $10 per hour, or that the numerous hours of legal services he was rendering as a guardian/conservator without a law license should have been charged to the estate.

Furthermore, the Appellant cites case law regarding family relationships and argues that the circuit court incorrectly considered his blood relationship as brother to Protectee here. However, because the circuit court actually awarded Appellant's fees totaling $3,468.53 for the two periods at issue, we find the circuit court did not actually deem Appellant's services gratuitous. In reducing Appellant's requested fees, we find the circuit court ordered just and reasonable compensation for Appellant as guardian and conservator of Protectee and did not abuse its discretion. Appellant's first and second points are denied.

*Point III: Circuit court did not err in failing to advocate for Appellant*

Appellant's third and final point alleges the circuit court erred in the judgment against Appellant resulting from the hearing of September 26, 2019, because Appellant complied with the circuit court's order of July 12, 2019, to retain Attorney for hearing or to be fined, in that Appellant was denied due process under law, being denied entry in courtroom, to testify, to

10

object under the requirements of both the U.S. Constitution and Missouri Constitution, which provide that "no person shall be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V; Mo. Const. Art. I Sect. 10. Appellant alleges, "It is axiomatic that 'a fair trial [Hearing] in a fair tribunal is a basic requirement of due process."

A trial court "enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its actions will not be grounds for reversal." Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011) (internal quotation marks omitted). "On appeal, we presume that rulings within the discretion of the trial court are correct and the appellant bears the burden of showing that the trial court abused its discretion." Skay v. St. Louis Parking Co., 130 S.W.3d 22, 26 (Mo. App. E.D. 2004).

For this Court to entertain "facts," the appellant must submit a record containing those facts to this Court in compliance with Rule 81.12. In re Jaitley, 495 S.W.3d 784, 787 (Mo. App. S.D. 2016). It is the appellant's burden to "file the transcript and prepare a legal file so that the record contains all evidence necessary to make determinations on the issues raised." Bank of New York Mellon Trust Co., N.A. v. Jackson, 484 S.W.3d 814, 816 (Mo. App. W.D. 2015) (internal quotation and citation omitted). "[T]he court of appeals cannot consider matters not preserved on the record and contained in an approved transcript. In the absence of such record there is nothing for the appeals court to decide." Id. (internal quotations and citations omitted).

"'The purpose of the legal file is to give the appellate court exact copies of the relevant documentary record necessary to decide the issues on appeal and to facilitate the accessibility of these documents.'" Washington v. Blackburn, 286 S.W.3d 818, 823 (Mo. App. E.D. 2009) (quoting Kent v. Charlie Chicken, II, Inc., 972 S.W.2d 513, 516 (Mo. App. E.D. 1998)).

11

Rule 81.12(a), titled, "Contents of Record on Appeal[,]" states: "The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." The legal file should always include "the docket sheet . . . ; the pleadings upon which the action was tried, the verdict, the findings of the court or jury, the judgment or order appealed from, motions and orders after judgment, and the notice of appeal, together with their respective dates of filing or entry of record. . . ." Rule 81.12 (b)(2)(C). The appellant is responsible for preparing the legal file. See Rule 81.12(b) ("The appellant shall prepare the legal file."); Rule 81.12(b)(2)(A) (titled "Duty of Appellant to Compile the Legal File[,]" and providing the method the appellant is to use to prepare the legal file in the event he is unable to create a system-generated legal file under Rule 81.12(b)(1)); Rule 81.12(b)(2)(B) (". . . appellant shall order any documents that are needed for the legal file from the clerk of the trial court within 30 days after the notice of appeal is filed."); Rule 81.12(d) ("Within the time prescribed by Rule 81.19, the appellant shall cause the record on appeal to be prepared in accordance with the provisions of Rule 81 and to be filed with the clerk of the proper appellate court."); Kent, 972 S.W.2d at 516.

Here, Appellant provides "facts" that he was never in the court room in front of a commissioner, he never was called to testify by the commissioner, he was totally unaware that two separate petitions for compensation were being adjudicated, he was instructed by the attorney to leave the courtroom because there was no reason to be there, and he was never asked to present any evidence or testify to or object to any issue. However, he fails to cite to the record as evidence of these facts other than another memo, "Matters Material to the Questions Presented for Determination by the Appellant [sic] Court and Documentary Evidence of Legal Effect," in

12

which he states the same facts. Moreover, it is always the Court's preference to resolve an appeal on its merits. Bank of New York Mellon Tr. Co., N.A. v. Jackson, 484 S.W.3d 814, 816 (Mo. App. W.D. 2015). The preference is so strong, this Court went beyond its required duties and invested its time combing through Appellant's legal file in the hopes that doing so would permit a decision on the merits. See Washington v. Blackburn, 286 S.W.3d 818, 823 (Mo. App. E.D. 2009) (failure to comply with Rule 81.12 hinders review and places an unfair burden on the court to locate documents in the record). The legal file here shows that on July 12, 2019, an order to retain attorney was set for hearing on August 22, 2019. An answer was filed in response by Appellant on August 5, 2019, but an entry of appearance was filed by Priscilla Price on behalf of Appellant on August 10, 2019. Thus, on August 12, 2019, an order of dismissal was filed for the show cause to retain attorney, and the August 22 hearing/trial was cancelled. On August 26, 2019, the circuit court set the Petition to Dispense with Administration for a hearing on September 26, 2019. "Citation to File Final Settlement" was also noted in that docket entry.

> *Pro se* parties are bound by the same rules of procedure as parties represented by lawyers, and are not entitled to indulgences they would not have received if represented by counsel. While this court recognizes the problems faced by *pro se* litigants, we cannot relax our standards for non-lawyers. It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties.

Elkins v. Elkins, 257 S.W.3d 617, 618 (Mo. App. E.D. 2008) (quoting Kittle v. Kittle, 31 S.W.3d 127, 129 (Mo. App. S.D. 2000)). "He who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an 'advocate' for or to assist and guide the pro se layman through the trial thicket." Cynthia Gray, Reaching Out or Overreaching: Judicial Ethics and Self-Represented Litigants, 27 J. Nat'l Ass'n Admin. L. Judiciary 97, 107 (2007).

The circuit court was not obligated to advocate for Appellant, ask him to present evidence or testify for himself, either during the time Appellant was represented by counsel or when Appellant acted *pro se*. We find the circuit court did not abuse its discretion in allowing the hearing to proceed without the claimed evidence Appellant now regrets he or his attorney did not present. Appellant's third point is denied.

### III. Conclusion

The judgment of the circuit court is affirmed.

_____
ROY L. RICHTER, Judge

Robert M. Clayton III, P.J., concurs.
Robert G. Dowd, Jr., J., concurs.

14