

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| JOHN M. HARK, | ) | No. ED106281 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Ralls County |
| vs. | ) | |
| | ) | Honorable Thomas J. Frawley |
| AMY M. (MCKINNEY) HARK, | ) | |
| | ) | |
| Appellant. | ) | Filed: January 22, 2019 |

## Introduction

Amy McKinney ("Mother") filed a motion to modify child support and child custody. Mother appeals both the trial court's modification of child support and the denial of the physical custody modification. Mother's first point on appeal claims the trial court misapplied the law in giving John Hark ("Father") a 50% credit when calculating the presumed child support amount. Mother claims the trial court used the incorrect Form 14 ("Old Form 14") when calculating the presumed child support amount. The trial court misapplied Rule 88.01[1] using the incorrect Form 14. We reverse and remand with instruction to complete the procedure using the Form 14 effective as of July 1, 2017 ("New Form 14"). In her second point on appeal, Mother argues the trial court's finding of no substantial change to modify physical custody is against the weight of the evidence. Mother fails to demonstrate the trial court's finding of no substantial change to

---

[1] All Rule citations are to the Missouri Supreme Court Rules (2017) unless otherwise indicated.

modify physical custody is against the weight of the evidence. We affirm the trial court's denial of custody modification.

## Factual and Procedural Background

Mother and Father married in June 1999. Their marriage was dissolved on May 27, 2010. The dissolution decreed joint legal and physical custody of the three children born of the marriage, two daughters, G.H. and N.H., and a son, M.H. The dissolution granted Mother physical custody every Monday morning to Wednesday morning and Father physical custody every Wednesday morning to Friday morning with alternating weekends, two weeks in the summer, and designated Holidays.

On January 21, 2015, Mother filed a motion to modify child support and to modify child custody---both legal and physical---from joint to sole. Mother sought to decrease Father's physical custody to every Wednesday night, alternating weekends, and two weeks in the summer with the same designated holidays as the original decree. In her motion, Mother claimed there was a substantial and continuous change since the dissolution, specifically: Father refuses to communicate with Mother about the children; Father makes degrading statements about Mother in the presence of the children; Father alienates the children's affection toward Mother; Father physically and emotionally abuses the children; and the children need counseling due to these changes. At the hearings, Mother also claimed Father's remarriage, the introduction of stepchildren to Father's home, and Father's bad temperament also had adverse effects on the custodial relationship between Father and the children. On December 11, 2015, Mother filed an amended motion to include a plan for college expenses in the child support modification.

On February 18 and 19, 2016, the trial court held a hearing ("first hearing") on the motions. On December 30, 2016, the trial court entered findings of fact and a judgment ("2016

2

Judgment") denying Mother's motion to modify custody and granting Mother's motion to modify child support. The modified monthly child support amount was calculated using the Old Form 14 which was effective until July 1, 2017. The court increased the child support amount from $1,352.00 to $1,513.00 per month. This child support amount was calculated using a 50% credit from Line 11 in the Directions, Comments for Use and Examples for Completion of Form 14 ("Directions"). The Line 11 credit is for the expenditure made by parents obligated to pay support during their periods of overnight visitation or custody.

Mother filed a motion to reopen evidence and reconsider the custody and child support modification. The trial court granted the motion, but only re-opened evidence for new evidence since the first evidentiary hearing on the issues of "legal custody, physical custody, parenting time and child support".

On July 14, 2017, the trial court held another hearing ("second hearing"). On October 10, 2017, the trial court issued a new judgment ("2017 Judgment") incorporating the factual findings from the 2016 Judgment and adding findings based on the new evidence. On November 11, 2017, Mother filed a motion to amend the 2017 judgment. The trial court denied the motion and issued an addendum to the 2017 Judgment adding findings but not changing the conclusions or orders from the 2017 Judgment.

The trial court made the following findings in the 2017 Judgment: Mother's testimony deserved little weight. Mother had "colored [G.H.]'s and [N.H.]'s view of [Father]". The daughters' testimonies were a result of a choice to either "adopt [Mother's] opinion of [Father] or betray their mother." On March 15, 2014, Father put his hands around G.H.'s neck in response to G.H. doing the same to her brother, M.H. The next day, Father picked M.H. up by the neck although the testimonies about this event contradict each other; N.H. was frightened

3

when witnessing the incident, but M.H. believed it to be a joke. In August 2014, Father remarried, and Father's new wife and stepchildren permanently moved in to Father's home. In February 2015, Father attempted to stop G.H. from calling her Mother, and Mother had G.H. call the police. In early 2015, N.H. allegedly saw Father brushing his stepdaughter's hair so harshly he removed clumps of hair. Father's stepdaughter denies this event. In June 2015, Malaine Hagemeier was appointed as the children's Guardian ad Litem.

In late 2016, Father, his new wife, and stepchildren moved to a new, more spacious house giving all the children more room to themselves and improving the situation with Father's stepchildren. The children each had their own room and the only shared personal space was N.H. and G.H.'s bathroom. In June 2017, Mother was engaged to Michael Land. At the second hearing, the children's teacher Ms. Allen testified their homework was not turned in late and she could not tell when the children were with one parent or the other. Further, she had no concerns about abuse or neglect with the Hark children. Allen had previously taught G.H and was currently teaching M.H. and N.H.

The trial court went on to find: since the dissolution, Mother, Father, and the children saw a number of counselors, and G.H and N.H. were seeing doctors for head, stomach, and other medical issues related to the dissolution. Mother believed the children were anxious about Father taking off with them. Penni Ippensen, another counselor to the children, believed they were anxious around Father. Ippensen believed the anxiety was heightened due to these proceedings. The Guardian ad Litem suggested that Mother and Father each take the children, separately from each other, to the same counselor, Angela Barton. Barton believed N.H. should be evaluated for anxiety issues. G.H. complained to Dr. McCoy, a treating physician, about her anxiety related to the hearings in these proceedings. G.H. went to a doctor about headaches in

4

October 2015 which she claims began around April 2015. The doctor prescribed her medicine for the headaches and for depression. N.H. developed stomach pains and trouble sleeping when at Father's house. As of the second hearing, N.H.'s pains and trouble sleeping had decreased, and she was not on any medication. G.H.'s headaches had also improved.

Based on these findings, the trial court denied Mother's attempts to modify joint legal[2] and physical custody. This appeal follows.

## **Analysis**

### Point I: The Trial Court Misapplied the Law Using Old Form 14

#### *Standard of Review*

We will affirm the judgment for a motion to modify child support unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Windsor v. Windsor*, 166 S.W.3d 623, 628 (Mo. App. W.D. 2005).

#### *Discussion*

Section 452.340[3] establishes the method for allocating and calculating child support. A court may adjust a child support award up to 50% when the children spend equal or substantially equal time with both parents. § 452.340.11. But it must do so according to the guidelines using the specific, descriptive, and numeric criteria for computing the support obligation. § 452.340.8. The Supreme Court of Missouri establishes these guidelines in Rule 88.01. Case law requires a two-step procedure to calculate and approve a child support award or modification of an award. *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. App. W.D. 1996). First, a court must calculate the presumed child support amount according to Rule 88.01 using an effective Form 14. *Id.* There is a rebuttable presumption that the presumed child support amount is the

---

[2] Mother raises no issue on appeal regarding the trial court's judgment on legal custody.
[3] All statutory references are to RSMo (2017) unless otherwise indicated.

correct amount of child support. Rule 88.01(b).  After the presumed child support amount is found, a court determines if the presumed child support amount is found unjust or inappropriate for any of the reasons described in the Directions. *Woolridge*, 915 S.W.2d at 379.  When the presumed child support amount is unjust or inappropriate, a court can use the Directions to increase or decrease from the presumed child support amount based upon the circumstances of the parties. *Id.* at 379-80.  Therefore, a court must first calculate the presumed child support amount according to the current Form 14 and make a finding of this amount for the record. *Reis v. Reis*, 105 S.W3d 514, 516 (Mo. App. E.D. 2014).  Then the court can rebut the amount by finding it unjust or inappropriate. Rule 88.01(b).

The New Form 14 and Directions took effect on July 1, 2017.  The New Form 14 states: "This Form 14 including directions, comments and assumptions, *may* be used prior to July 1, 2017, and *shall* apply to all proceedings in which the order or judgment is entered after July 1, 2017." (*Emphasis added*).  Because the trial court reopened and heard new evidence on the issue of child support and entered an amended judgment[4] after July 1, 2017, the New Form 14 should have been used to calculate the presumed child support amount in the 2017 Judgment.

A court must find the correct presumed child support amount in order to achieve the rebuttable presumption from Rule 88.01(b). *Reis*, 105 S.W3d at 516.  This amount must be calculated for the record using an effective Form 14. *Id*.

The trial court found the presumed child support amount using the Old Form 14 for both the 2016 and 2017 Judgments.  The Old Form 14 allowed a Line 11 credit of up to 50%.  The Directions stated: "If the parent obligated to pay support…has been awarded…custody of more than 109 days per year; the adjustment for that parent may be greater than 10% up to a maximum

---

[4] Under Rule 78.07(d), unless otherwise specified in an amendment, "an amended judgment shall be deemed a new judgment for all purposes".  Here, no specification to the contrary was contained within the 2017 judgment.

6

of 50%." Using the Old Form 14, the trial court had the discretion to use a 50% Line 11 credit when calculating the presumed child support amount.

Line 11 of the New Form 14 limits the court's discretion in the first step of the *Woolridge* procedure and provides a chart which designates the amount of credit. When the parent obligated to pay support has custody for 181-183 days per year, the maximum credit of 34% is used to calculate the presumed child support amount. The New Form 14 states: "If the Court finds that application of these rules, including the line 11 credit, are unjust and inappropriate, it may apply an overnight visitation or custody adjustment of over 34% and up to 50% based upon the circumstances of the parties." The New Form 14 does not allow a 50% credit until the second step of the *Woolridge* procedure occurs.

The trial court granting a 50% Line 11 credit in the 2017 Judgment is a misapplication of the law under the New Form 14. This credit cannot be applied until the second step of the *Woolridge* procedure. The court must calculate the presumed child support amount using the New Form 14, and then complete the Rule 88.01 procedure as outlined in *Woolridge*.

Point One is granted. We reverse and remand for the proper calculation of presumed child support amount.

Point II: The Trial Court Found No Substantial Change to Modify Physical Custody

*Standard of Review*

When reviewing a motion to modify custody, we affirm the trial court's custody determination unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Brown v. Shanahan*, 141 S.W.3d 77, 80 (Mo. App. E.D. 2004). The evidence and the reasonable inferences are to be viewed in the light most favorable to the judgment of the trial court. *Bohac v. Akbani*, 29 S.W.3d 407, 411 (Mo.

App. E.D. 2000). "A trial court's custody determination is afforded greater deference than other decisions." *McGahan v. McGahan*, 237 S.W.3d 265, 269 (Mo. App. E.D. 2007).

Section 452.410 governs the modification of child custody in two steps. A movant must first show a change has occurred in the circumstances of the children or the custodial parents based upon facts that have arisen since the prior decree or facts that were unknown to the court at the time of the prior decree. § 452.410.1. If the necessary level of change in circumstances is shown, movant must next show modification is necessary to serve the best interests of the children. *Id*.

The change required in the first step differs based on the type of modification sought. *Russell v. Russell*, 210 S.W.3d 191, 196 (Mo. banc 2007). When physical custody is modified from joint to sole, a "substantial change" must be shown. *Id*. at 194. The dissolution decreed joint physical custody. Mother sought sole physical custody. *See Morgan v. Morgan*, 497 S.W.3d 359, 370 (Mo. App. E.D. 2016). The court correctly found the modification was from joint to sole physical custody. Therefore, Mother needed to show a substantial change in circumstances in this case.

Not every change in circumstances calls for a modification of custody. *Eastes v. Eastes*, 590 S.W.2d 405, 408 (Mo. App. E.D. 1979). When deciding a physical custody modification, the court only considers changes related to the custodial parents' abilities to care for the children. *J.F.H v. S.L.S.*, 550 S.W.3d 532, 537 (Mo. App. E.D. 2017). "[A] change in the circumstances of the parents' use of parenting time and their sharing of it in such a way as to assure the child[ren] of frequent, continuing, and meaningful contact with both parents" is the main concern

of the court in assessing which changes should be considered. *Id*. Substantial change requires a more rigid burden using the same physical custody factors. *Morgan*, 497 S.W.3d at 365-66.

In the 2017 Judgment, the court found "no change has occurred in the circumstances of [Father] and [Mother], as custodial parents, or the minor children *as a result of which* the best interests of the minor children require modification of the terms of the joint physical custody agreement."[5] (*Emphasis added*). The use of the word "substantial" is not necessary. *Southard v. Southard*, 239 S.W.3d 172, 177 (Mo. App. E.D. 2007). Because "no change" is less change than "no substantial change" and the court explicitly classified the modification as one from joint to sole physical custody, we treat the finding of "no change" as a finding of no substantial change.

Mother has not demonstrated the court's finding of no substantial change was against the weight of the evidence. We find the Southern District's four step method to state an "against the weight of the evidence" challenge useful here. *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010). To marshal an "against the weight of the evidence" argument, an appellant must first identify a challenged factual proposition, the existence of which is necessary to sustain the judgment. *Id*. Second, an appellant must identify all of the favorable evidence in the record supporting the existence of that proposition. *Id*. Third, an appellant must identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit. *Id*. And, lastly, an appellant must demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition. *Id*. The

---

[5] At the beginning of the same paragraph, the court found "no substantial change has occurred…" as it pertains to a modification of joint legal custody.

*Houston* court found the "failure to fully identify all material favorable evidence undermines [the] ability to demonstrate why that evidence was so lacking in probative value." *Id*. at 188.

The factual proposition at issue in this case is the finding of no substantial change. In order to succeed in an "against the weight of the evidence" challenge, Mother needed to provide this Court all the evidence in the record supporting the trial court's decision, provide all the evidence contrary to the trial court's decision resolving all conflicts in testimony in accordance with the trial court's credibility determinations, and then demonstrate why the favorable evidence, with the reasonable inferences drawn from that evidence, is so lacking in probative value. Here, all Mother does is reargue her evidence, ignoring all the contrary evidence. Based on our standard of review and the *Houston* requirements, Mother did not complete the steps necessary to show the evidence supporting the trial court's judgment is so lacking as to demonstrate the trial court's finding of no substantial change was against the weight of the evidence.

The court is in the best position to find the facts and weigh the evidence. It is free to believe all, some, or none of the evidence offered to prove a contested fact. *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014). We defer to the court to weigh any contested or contradicting evidence to make credibility determinations. *Id*. The appellate court will not re-find facts based on credibility determinations through its own perspective. *Id*. This court must exercise extreme caution in setting aside a judgment as against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong. *Scherder v. Sonntag*, 450 S.W.3d 856, 860 (Mo. App. E. Dist. 2014). We do not hold that firm belief here.

Since the dissolution, Father remarried. Father's wife and step-children permanently moved into Father's home. G.H., N.H., and M.H. all complained of difficulty due to Father's

10

step-children. At the second hearing, the children's teacher testified the schoolwork of the children was not noticeably different when staying with one parent or the other. The court also found the children liked Father's new wife. The court also found, when Father bought a new larger house, the problems between the children and stepchildren improved.

Mother and Father agreed G.H. and N.H. experienced stress-related physical symptoms. Mother believes the symptoms were caused by Father and his physical custody. Father disagrees and also feels the symptoms have subsided as of the second hearing, in part, due to a move to a bigger house with more space and, in part, due to partial resolution of this case as well as medication and counseling. The court found N.H.'s medical issues had subsided and G.H. had improved and no longer required medication.

Mother argued Father was physically abusive to the children. This too is contested based on the record. Although Mother, N.H., and G.H. testified to concern about Father's behavior, the court did not find Mother credible and felt N.H. and G.H. both followed Mother's wishes while testifying. The trial court found Mother's behavior "colored" G.H.'s and N.H.'s "view" of Father. The children's teacher, counselors, and doctors did not state any concern about the alleged abuse or danger to the children.

Mother claims the problems faced by the children were of such a degree the court, Mother, and Father all sought counseling for the children. This is true. However, the court found the testimony of the counselors rebutted many of Mother's contentions, noting the counseling improved the relationships between the children and the custodial parents.

The trial court considered all of the evidence Mother brings before us. We do not re-find facts or make our own credibility determinations. *Ivie*, 439 S.W.3d at 206. Given our standard of review and the trial court's credibility determinations, Mother fails to demonstrate the trial

11

court's finding of no substantial change to modify physical custody is against the weight of the evidence.

Point Two is denied.

### Conclusion

For the foregoing reasons, that portion of the judgment modifying child support is reversed and remanded with instruction to recalculate the presumed child support amount using the New Form 14 and complete the two-step *Woolridge* procedure.  In all other respects, the judgment is affirmed.

 

_____
Philip M. Hess, Presiding Judge

Robert G. Dowd, Jr., J. and
Mary K. Hoff, J. concur.