

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| DANA L. GIRGIS, | ) | No. ED110868 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 16JE-DR01171-01 |
| | ) | |
| MARK S. GIRGIS, | ) | Honorable Shannon R. Dougherty |
| | ) | |
| Appellant. | ) | Filed: October 24, 2023 |

### Introduction

Mark Girgis ("Father") appeals from the circuit court's judgment modifying the child support payments he owes to Dana Girgis ("Mother"). The circuit court erred in its Form 14 calculation regarding the number of nights the children spend with Father. This Court reverses the judgment on this basis, and enters judgment as it should have been entered under Rule 84.14. The judgment is affirmed in all other respects.

### Factual and Procedural Background

Following a breakdown in their relationship, Mother and Father sought, and obtained, a judgment dissolving their marriage. As part of that judgment, the circuit court granted Mother and Father joint physical and legal custody of their two children and ordered Father to pay child support to Mother.

A year later, Mother filed a motion to modify the judgment, seeking sole legal and physical custody of the children and additional child support. Father filed a counter motion to modify seeking sole legal and physical custody and a reduction in the child support award. The circuit court appointed a guardian ad litem ("GAL") to represent the children.

At trial, the parties presented competing parenting plans and Form 14s setting forth their proposed arrangements for the children. Each party presented two Form 14s: one that included both children and another for when one of the children reached the age of emancipation. They also presented evidence supporting their respective proposed parenting plans, including evidence regarding income and health insurance.  That evidence is discussed in further detail as needed.

After hearing all the evidence, the circuit court issued a judgment and decree of modification, granting Mother full legal custody and reducing Father's time with the children. The circuit court adopted the parenting plan submitted by the GAL and the Form 14s submitted by Mother. The judgment also required Mother to purchase health insurance for both children and Father to pay additional child support.

Father appeals the child support award in the circuit court's modification judgment.

**Standard of Review**

Section 452.340, RSMo 2016[1] and Rule 88.01 establish the method and guidelines for calculating child support. *Hark v. Hark*, 567 S.W.3d 671, 676 (Mo. App. 2019). To calculate child support under Rule 88.01, circuit courts must follow a two-step procedure. *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. App. 1996). "First, a court must calculate the presumed child support amount according to Rule 88.01 using an effective Form 14." *Hark,* 567 S.W.3d at 676. When Form 14 is used, "[t]here is a rebuttable presumption that the presumed child support

---

[1] All statutory references are to RSMo 2016.

2

amount is the correct amount of child support." *Id.* Second, the circuit court must determine if the presumed child support amount is unjust or inappropriate based on the Form 14 directions. *Hark*, 567 S.W.3d at 676. If the amount is unjust or inappropriate, the court may adjust the support based on the circumstances of the parties. *Id*. A court "may accept the proposed Form 14 calculations from the parties or reject both parties' proposed Form 14s and prepare its own." *Schaberg v. Schaberg*, 637 S.W.3d 512, 525 (Mo. App. 2021).

Appellate courts review the circuit court's application of this two-part procedure to determine if it is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Dodge v. Dodge*, 398 S.W.3d 49, 52 (Mo. App. 2013) (internal quotation omitted). If the circuit court's application of the procedure is sound, appellate courts "will interfere with the [circuit] court's award only if the [circuit] court abused its discretion by ordering an amount that is against the logic of the circumstances or arbitrary or unreasonable." *Scobee ex rel. Roberts v. Scobee*, 360 S.W.3d 336, 342 (Mo. App. 2012) (internal quotation omitted).

**Analysis**

Father argues that the circuit court incorrectly calculated the presumed child support amount under Form 14 because the court incorrectly valued his income, overcalculated Mother's health insurance expenditures, and under counted the number of overnight visits the children had with Father. Father contends that the circuit court's findings on these issues are either unsupported by the evidence or against the weight of the evidence.[2]

---

[2] Father's brief does not comply with Rule 84.04. First, Father's sole point relied on fails to follow the format required by Rule 84.04(d). That section provides a template that all points relied on must follow. Second, Father's sole point is impermissibly multifarious. Father presents two legal bases for reversal: that the circuit court's judgment was 1) unsupported by the evidence or 2) was against the weight of the evidence. These are two separate claims of error that must be

3

*Father's Income*

Father argues that the circuit court miscalculated the presumed correct child support amount, in part, by miscalculating his income. Specifically, Father claims that the circuit court erred by basing its calculation of his income on Father's bank records instead of his tax returns and by erroneously classifying certain deposits as income.

Appellate courts review the presumed correct child support amount "calculation to ensure that not only is it done accurately from a mathematical standpoint, but that the various items and their amounts were properly included in the calculation and supported by substantial evidence." *Dodge,* 398 S.W.3d at 52 (quoting *Bond v. Bond,* 77 S.W.3d 7, 11 (Mo. App. 2002)). The appellate court "will not substitute [its] judgment for that of the [circuit] court absent a manifest abuse of discretion, and [it] will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it." *Id*. (internal quotation omitted).

The income for a self-employed parent, like Father, generally is considered to be the "net profit or net loss on the schedules filed as part of the parent's federal income tax return." Form 14, Line 1, Direction, Comment I. However, as recognized by the same comment, "the federal tax return is not always the best approach to determine gross income for child support purposes." *Plager v. Plager*, 426 S.W.3d 689, 699 (Mo. App. 2014). Here, the circuit court determined that Father's income was represented more accurately by the monthly deposits shown in his bank account minus deposits that father testified were not payments from his current job.

---

brought in separate points. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). "Generally, multifarious claims of *error* preserve nothing for appeal and are subject to dismissal." *Barbieri v. Barbieri*, 633 S.W.3d 419, 432 (Mo. App. 2021) (emphasis in original). Father's brief also did not contain a statement explaining how these errors were preserved for appellate review and did not state the standard of review. Both of these statements are required by Rule 84.04(e). Because we are able to ascertain Father's arguments, however, we exercise our discretion to review the merits of Father's non-compliant brief.

At trial, Father submitted his tax returns from 2018-2020 into evidence. From 2018-2020, Father worked as an independent contractor for Uber, Lyft, Postmates, Point Pickup, and Instacart. But, in 2021, Father worked only for Point Pickup. Father submitted no tax returns for 2021. As a result, the circuit court did not have a tax return showing Father's current income from his current employment situation.

To show Father's 2021 income, Mother submitted Father's 2021 bank statements into evidence. Father was questioned about the bank statements and affirmed that the statements, minus certain deposits, accurately represented his current income. Nevertheless, Father contends that the circuit court erred in including certain deposits, including the proceeds from the sale of a truck, power washer, and an inheritance in his income valuation.[3] Other than Father's testimony, he did not submit any receipts, cancelled checks, or documentation supporting the source of these deposits. Where a parent has testified about calculating income, the circuit court is "well within its discretion to find that [the] testimony was not credible and to reject that testimony." *Word v. Peterson*, 57 S.W.3d 894, 902 (Mo. App. 2001). The circuit court found "parts of Father's testimony to be credible but a vast majority not to be credible or genuine."

Because the circuit court's judgment regarding Father's income was supported by Father's bank accounts and his own testimony, it is supported by substantial evidence.

*Health Insurance Costs*

Father claims that actual costs should have been used to calculate health insurance expenses, as opposed to an estimation. Father also claims the children could have been enrolled in Medicaid, a cheaper alternative to the health insurance provided through Mother's employer.

---

[3] Father also contests the inclusion of another inheritance. However, this inheritance deposit was made outside of the 12-month deposit window used to calculate Father's income and was not considered in the income calculation.

Father did not properly preserve these issues for appeal. Parties must, "at the time the ruling or order of the court is made or sought, make[] known to the court the action that the party desires the court to take or objections to the action of the court and grounds therefor ...." Rule 78.09. Failure to object bars a party from appellate review of error. *Brown v. Brown*, 423 S.W.3d 784, 787 (Mo. banc 2014). "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *In re Marriage of Cunningham*, 571 S.W.3d 688, 695 (Mo. App. 2019) (quoting *Sutton v. McCollum*, 421 S.W.3d 477, 481 (Mo. App. 2013)).

At trial, Mother admitted evidence and gave testimony that healthcare costs for the children amounted to $564 per month. Father did not object to this evidence or to the methodology in its calculation. Father did not object to the Form 14s Mother admitted which listed her health insurance expenses of $564 per month. Father did not admit any evidence related to healthcare expenses, testify about being eligible for Medicaid, or admit any proposed Form 14 to rebut Mother's form. In Father's proposed judgment he incorporated a proposed parenting plan which stated "Mother shall maintain health, vision, and dental insurance on the minor children as available through her employer."[4] Finally, Father did not raise any issue involving health insurance in his motion for new trial. Father cannot now challenge Mother's healthcare calculation for the first time on appeal after he had numerous opportunities to bring such a challenge to the circuit court's attention.

Father also complains that he could have insured the children more cheaply through Medicaid. But, the documents he submitted to the circuit court in his proposed judgment gave Mother the responsibility of maintaining health insurance for the children through her employer.

---

[4] Father's proposed judgment was submitted along with two Form 14s, which were not incorporated in his proposed judgment. In both Form 14s Father listed $584 under the healthcare expenses of Mother.

Father acquiesced to Mother maintaining private health insurance at trial and cannot now complain of error. Father did not preserve either issue regarding insurance at trial.

*Overnight Credit*

Mother and Father both agree that the circuit court erred in calculating Father's overnight visitation credit. Under the parenting plan, Father is entitled to approximately 104 overnight visits each year, subject to slight fluctuation based on where holidays fall on the calendar. To conform with the parenting plan, the Form 14 should have been calculated with Father's overnight visits in the 92-109 night range, which would give Father a 10% visitation credit. Instead, the circuit court's judgment placed Father's overnight visits in the 73-91 night range, resulting in only a 9% visitation credit. This error results in Father paying $16 more per month in support when both children are unemancipated and $11 more per month when one child is emancipated.

Mother argues this error is *de minimis*, and therefore, this Court should uphold the judgment. *See Franke v. Franke*, 913 S.W.2d 846, 851 (Mo. App.1995) (refusing to reverse a child support award for a $42 calculation error). Father argues this Court should reverse and remand the entire award. Both parties agree that, if the circuit court had not erred, the Form 14 would record overnight visits with Father in the 92-109 range and Father would receive a 10% visitation credit.

Given the agreement by the parties on the error and the amount, this Court opts to exercise its authority under Rule 84.14 to "give such judgment as the court ought to give." *See also Pecher v. Pecher*, 398 S.W.3d 580, 590 (Mo. App. 2013) (modifying the amount of a child support award). We, therefore, modify the judgment of the trial court to show a 10% visitation

7

credit and reducing Father's child support obligation by $16 to $852, when two children are unemancipated and by $11 to $659, when one child is unemancipated.

## Conclusion

Under the authority of Rule 84.14, this Court amends Father's child support obligation to $852 for two children and $659 when only one child is unemancipated. This reflects a change in Line 11 of Form 14 to update Father's overnight visitation range to 92-109 and his visitation credit to 10%. The judgment is affirmed in all other respects.

_____
John P. Torbitzky, Judge

Thomas C. Clark II., C.J., and
James M. Dowd, J., concur.