

## MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF ISAIAH BOYDSTON, | ) ) ) | |
| Appellant, | ) | WD86231 |
| v. | ) ) | |
| LORENE BOYDSTON; | ) ) | OPINION FILED: |
| Respondent, | ) ) | September 17, 2024 |
| CARLA DRUMMOND; and | ) ) | |
| Respondent, | ) ) | |
| SHANNA BURNS, PUBLIC ADMINISTRATOR, | ) ) ) | |
| Respondent. | ) ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
**Honorable Thomas Fincham, Judge**

**Before Division Two: W. Douglas Thomson, Presiding Judge,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Isaiah Boydston (Boydston) appeals the Platte County Circuit Court (circuit court) judgment denying his petition for Lorene Boydston[1] (Grandmother) to be appointed his successor guardian and conservator. On appeal, Boydston argues that the circuit court

---

[1] Lorene Boydston is Isaiah Boydston's paternal grandmother.

erroneously denied his petition on the basis that Boydston was not authorized to file requesting a change of guardian, and that the circuit court's judgment was not supported by substantial evidence and was against the weight of the evidence. We affirm.[2]

## Factual and Procedural Background

Boydston was born prematurely in 1999. Boydston was diagnosed with cerebral palsy from a brain injury and he suffers from epilepsy. He has multiple medical issues that must be monitored including limited peripheral vision, spasticity of his muscles, secondary polycythemia, high cholesterol, and an overarching palate, which prevents him from being able to properly clean his teeth. Boydston's IQ is between 55-60 and he has an intellectual disability.

In 2015, Boydston's Mother, Carla Drummond, and Father were divorced and pursuant to the dissolution judgment, Mother and Father were awarded fifty-fifty parenting time of Boydston.

In 2017, Mother and Father filed separate applications for the appointment of guardian and conservator for Boydston. In November 2017, the court appointed the Platte County Public Administrator (Public Administrator) as Boydston's temporary guardian and conservator and issued temporary letters of guardianship and conservatorship to the Public Administrator.

In January 2018, after reaching the age of majority, the circuit court declared Boydston to be totally incapacitated and totally disabled. The circuit court issued full letters of guardianship and conservatorship to the Public Administrator.

On June 14, 2021, Boydston filed a petition for appointment of limited guardian and conservator and requested appointment of a successor guardian and conservator. Mother filed a

---

[2] Respondents Lorene Boydston and Shanna Burns, Public Administrator, did not file briefs in the matter.

motion to dismiss. Grandmother then filed a motion to terminate the guardianship, and requested, in the alternative, that she be appointed Boydston's guardian if a guardian was still needed. The circuit court granted Mother's motion to dismiss Boydston's petition.

On April 4, 2022, Boydston, with counsel, filed another petition for limited guardianship and conservatorship and appointment of successor guardian and conservator. Boydston requested a hearing on his petition and that he be restored or, in the alternative, that his guardianship be limited to driving, medical care, marriage, and voting. He further requested that Grandmother be appointed his successor limited guardian and conservator. Boydston did not allege that the Public Administrator was failing to discharge her statutory duties or that the Public Administrator was not acting in his best interests. Mother and the Public Administrator again filed a motion to dismiss Boydston's petition.[3] The circuit court interviewed Boydston and subsequently denied the joint motion to dismiss and allowed Boydston to proceed with hired counsel instead of his court-appointed counsel.

In September 2022, the Public Administrator filed a conditional resignation as Boydston's guardian and conservator. The Public Administrator indicated that she did not object to the appointment of Grandmother as Boydston's successor guardian and conservator. Mother filed objections to the Public Administrator's conditional resignation, stating that she believed it was still in Boydston's best interest for the Public Administrator to serve as Boydston's guardian

---

[3] The joint motion to dismiss was based on the fact that in Boydston's petition for appointment of successor guardian and conservator, an attorney stated that she entered into an agreement with Boydston to represent him. Mother and the Public Administrator alleged that this agreement was made despite the attorney knowing Boydston had been deemed incapacitated and unable to make legal decisions on his own behalf. Mother and the Public Administrator argued, therefore, that the Public Administrator, Boydston's guardian and conservator, would have needed to sign any legally binding document. Additionally, Mother and the Public Administrator pointed out that the circuit court had previously appointed a different attorney to represent Boydston.

and conservator. Mother indicated that she did not believe that Grandmother was fit or suitable to serve as Boydston's guardian and conservator. Mother then filed her own petition for appointment of successor guardian and conservator requesting that she be appointed Boydston's successor guardian and conservator.

Grandmother's and Boydston's depositions were taken in October 2022. After that, Grandmother moved to dismiss her motion to terminate guardianship and conservatorship but retained her motion for appointment of successor guardian and conservator. The Public Administrator then filed an amended conditional resignation. In that filing, the Public Administrator indicated that she tendered her conditional resignation because Boydston had family members willing to serve and left it to the court to determine if either person met the requirements to serve as Boydston's guardian and conservator.

In November 2022, Boydston filed a motion to dismiss his petition for partial restoration but retained his petition for appointment of successor guardian and conservator.

The circuit court held a five-day bench trial beginning in November 2022. The circuit court took up Boydston's, Grandmother's, and Mother's petitions for appointment of a successor guardian and conservator and the Public Administrator's conditional resignation.

At the trial, testimony was adduced that Boydston has limited use of the left side of his body which limits his ability to grip things and that Boydston needs help with daily living activities such as grooming, bathing, dressing, brushing his teeth, flossing, and cooking. Boydston has a personal care assistant who assists him with dressing, grooming, bathing, and other daily living activities four days a week for six to ten hours per day.

Over the course of the bench trial, the circuit court heard evidence and found that the relationships between Mother and Father, and Mother and Grandmother are not positive and are

not in Boydston's best interests. Grandmother and Father have made derogatory statements about Mother. Additionally, Boydston testified that Grandmother does not like Mother. The family dynamics and discord make the case "tumultuous" for the Public Administrator to manage, requiring approximately three times more hours spent on this case to "mediat[e] family disputes" than on other assigned cases.

Evidence was presented that Boydston is easily influenced by Father and Grandmother. Grandmother and Father tell Boydston that he does not need a guardian, that he should be able to make his own decisions, and that if Grandmother were appointed his guardian he would be able to make all of his own decisions. Grandmother told Boydston that he could live in an apartment by himself.

The Public Administrator testified that when Grandmother and Father tell Boydston that he does not need a guardian or conservator it creates conflict and causes Boydston to have emotional distress and "emotional explosions" while at Mother's house. In the Public Administrator's opinion, Boydston cannot, by himself, meet essential requirements for food, clothing, shelter, or safety. The Public Administrator believes that Boydston should be able to participate in making certain decisions but that he is unable to make decisions about where he should live, where he receives medical and mental health treatment, how to call a doctor, or order his medications independently. The Public Administrator acknowledged that she had concerns about Grandmother serving as guardian and conservator because of the amount of conflict between Grandmother and Mother and that Grandmother was not assisting with Boydston's medication or his hygiene sufficiently.

Mother testified that since the guardianship has been in place she has had both verbal and physical confrontations with Boydston, she frequently has problems with Boydston after he has

5

been with Father or Grandmother, and Father and Grandmother tell him he should not have a guardian or, alternatively, that Grandmother will be his guardian. Mother testified that she filed her own petition to be appointed Boydston's successor guardian and conservator because she did not believe it would be in Boydston's best interests if Grandmother were appointed his successor guardian and conservator. Mother stated that she believes it would be in Boydston's best interest for the Public Administrator to remain as his guardian and conservator.

The Public Administrator's duty as guardian to Boydston includes coordinating and overseeing his placement, his medical care, employment, any of the things that affect his day-to-day living, and as conservator, the Public Administrator manages Boydston's finances, insurance, and assets. Pursuant to statute, the Public Administrator also files an annual report to the court every year. The Public Administrator testified that she believed her office was acting in Boydston's best interests.

The Public Administrator testified that she filed a conditional resignation because Boydston had a family member who was "willing and able" to take the case and that it was in Boydston's best interest for "somebody else to give it a shot." The Public Administrator, however, stated that if she remained as Boydston's guardian and conservator, she wanted "guidance" from the circuit court in the form of either a parenting plan or visitation schedule for the parties to follow in order to lessen the family turmoil.

The circuit court issued its judgment on March 24, 2023, in which it denied Boydston's and Grandmother's request that Grandmother be appointed his successor guardian and conservator; denied Mother's request that she be appointed Boydston's successor guardian and conservator; and denied the Public Administrator's request to resign. The judgment also included a parenting plan with provisions for parenting time and visitation.

6

Boydston appeals. Additional facts relevant to the disposition of the appeal are included below as we address Boydston's points on appeal.

## Standard of Review

We review a court-tried probate case under the *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976) standard. *Matter of Williams*, 573 S.W.3d 106, 112 (Mo. App. W.D. 2019). We will affirm the probate court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* (quoting *In re Estate of Schooler*, 204 S.W.3d 338, 342 (Mo. App. W.D. 2006)). "Claims that there is no substantial evidence to support the judgment or that the judgment is against the weight of evidence necessarily involve review of the trial court's factual determinations." *Douglass v. Douglass*, 570 S.W.3d 130, 134 (Mo. App. W.D. 2019) (quoting *Winston v. Winston*, 449 S.W.3d 1, 6 (Mo. App. W.D. 2014)).

This Court reviews "the evidence in the light most favorable to the trial court's judgment and [we] defer to the trial court's credibility determinations." *Harris v. Harris*, 655 S.W.3d 33, 38 (Mo. App. W.D. 2022). "This is so 'even if the evidence could support a different conclusion because the trial court is in a better position to judge witness credibility, sincerity, character[,] and other intangibles not revealed in a transcript.'" *Id.* (quoting *Taylor v. Taylor*, 12 S.W.3d 340, 344 (Mo. App. W.D. 2000)).

## Analysis

### Points One and Two

In his first and second points, Boydston contends that the circuit court erred in denying his request to appoint Grandmother as his successor guardian and conservator. Boydston contends that the circuit court erred by stating, as Boydston characterizes it, that he was "not

7

authorized" to file a petition requesting a change of guardian. In his first point, Boydston contends that as a ward, he has the right under section 475.082.5[4] to file a motion alleging that his guardian is not discharging their responsibilities and duties or has not acted in his best interests. In his second point, Boydston argues that under section 475.361 he has the right to bring an action relating to his guardianship.

"Section 475.082.5 allows any 'interested person' to file a motion alleging that a guardian or conservator is not discharging his or her statutory responsibilities and duties or has not acted in the best interests of his or her ward or protectee." *Estate of Schneider*, 570 S.W.3d 647, 654 (Mo. App. W.D. 2019). When such motion is filed, or if the court "independently as part of its status review determines the [guardian or] conservator is not performing his [or her] duties or acting in the [ward's or] protectee's best interests, the probate court may order a hearing be held and cause the [guardian or] conservator to appear before the court." *Estate of Sturmfels v. Frederick*, 261 S.W.3d 559, 563 (Mo. App. E.D. 2008) (citing § 475.082.5).

Section 475.361 outlines rights that wards have while under guardianship. Specifically, section 475.361.1(4) provides that wards may:

> Individually or through the ward's representative or legal counsel, bring an action relating to the guardianship, including the right to file a petition alleging that the ward is being unjustly denied a right or privilege granted by this chapter, including the right to bring an action to modify or terminate the guardianship under the provisions of section 475.083.

We agree with Boydston that as an "interested person," which includes the ward or protectee, he can file a motion under section 475.082.5 alleging that his guardian or conservator is not discharging his or her statutory responsibilities and duties or has not acted in his best

---

[4] Statutory references are to the Revised Statutes of Missouri, as updated through the 2022 Cumulative Supplement.

interests. Boydston also has the right to file an action relating to his guardianship under section 475.361 alleging he is being unjustly denied a right or privilege, including the right to bring an action to modify the guardianship. The circuit court, in its judgment, did not indicate otherwise, regardless of Boydston's argument to the contrary.

It seems that Boydston's actual argument is that he believes he has the right to select his successor guardian and conservator under section 475.050.1(1), which lists as a first choice "any eligible person nominated by the person" and, under 475.050.1(3), which lists certain adult relatives. We disagree. Section 475.050's stated preference for relatives over other unrelated parties only applies when "a court is faced with *original applications* for appointment filed by a close relative and some other party." *Matter of Williams*, 573 S.W.3d at 114 (quoting *In re Estate of Davis*, 758 S.W.2d 461, 464 (Mo. App. W.D. 1988)). After a guardian and conservator is appointed by the court, the "preference disappears." *Id.*

Here, Boydston filed a petition for the appointment of a successor guardian and conservator. This was not an original guardianship/conservatorship proceeding. The circuit court previously declared Boydston totally incapacitated and disabled on January 16, 2018, and the Public Administrator has been acting as Boydston's guardian and conservator since then.

The circuit court did not dismiss Boydston's petition but addressed it on the merits over the course of five days of trial before entering its judgment denying the petition. The circuit court did not deny or otherwise limit Boydston's ability to file such petition or request under either section 475.082.5 or 475.361.1(4) as Boydston argues in this appeal. It instead found that Boydston did not meet his burden to show that a successor guardian and conservator should be appointed. As discussed in more detail *infra*, here, the Public Administrator is discharging her duties and responsibilities as required and is acting in Boydston's best interests.

9

Points one and two are denied.

## Point Three

In his third point, Boydston argues the circuit court erred in denying his petition to appoint Grandmother as his successor guardian and conservator because substantial evidence supported removal of Boydston's current guardian and conservator, the Public Administrator, and the evidence at trial did not demonstrate violations of the law or acts of dishonesty on Grandmother's part.

In bringing a not-supported-by-substantial-evidence challenge, a party must complete three sequential steps:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,
>
> (3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010). "We do not review whether substantial evidence was presented that would support some other hypothetical judgment that the trial court possibly could have entered." *Sugar Ridge Props. v. Merrell*, 489 S.W.3d 860, 872 (Mo. App. S.D. 2016). "Whether an appellant presented substantial evidence that arguably supports some other hypothetical judgment is irrelevant to that inquiry and preserves nothing under our standard of review for appellate consideration." *Id.*

Boydston's brief does not follow the required sequence for this challenge. First, Boydston fails to identify a challenged proposition, the existence of which is necessary to sustain the judgment. We could assume that the challenged factual proposition under this point is that

10

the Public Administrator is discharging her statutory duties and acting in Boydston's best interests. However, Boydston fails to identify all of the favorable evidence in the record supporting the factual proposition that the Public Administrator is acting in Boydston's best interests. Boydston also fails to cogently explain why that favorable evidence, when considered along with the reasonable inferences drawn therefrom, does not have probative value. By not following the sequential analysis set forth above, Boydston's brief is robbed of any analytical or persuasive value. *See Ben Brower Prop. Co., LLC v. Evella, LLC*, 554 S.W.3d 504, 512 (Mo. App. S.D. 2018).

In any event, even if Boydston's arguments had applied the correct analytical framework, his claim fails. The record demonstrates that substantial evidence supports the circuit court's decision and judgment leaving the Public Administrator as Boydston's guardian and conservator.

"Section 475.082.5 allows the circuit court to remove a guardian or conservator upon finding that he or she is not discharging his or her duties and responsibilities as required by this code or is not acting in the best interests of the ward or protectee . . . ." *Matter of Williams*, 573 S.W.3d at 114 (internal quotations omitted).

Section 475.082.5 reads, in pertinent part:

> If it appears to the court as part of its review or at any time upon motion of any interested person, including the ward or protectee or some person on behalf of the ward or protectee, that the guardian or conservator is not discharging the guardian's or conservator's responsibilities and duties as required by this chapter or has not acted in the best interests of the ward or protectee, the court may order that a hearing be held and direct that the guardian or conservator appear before the court . . . At the conclusion of the hearing, if the court finds that the guardian or conservator is not discharging his or her duties and responsibilities as required by this code or is not acting in the best interests of the ward or protectee, the court shall enter such orders as it deems appropriate under the circumstances.

Nowhere in Boydston's petition to appoint Grandmother as his successor guardian and conservator did he allege that the Public Administrator had not discharged her responsibilities or

11

duties or had not acted in his best interests. Grandmother and Mother's petitions also did not allege that the Public Administrator failed to discharge its responsibilities or failed to act in Boydston's best interests.

At trial, however, Boydston claimed that the Public Administrator did not act in Boydston's best interests, did not promote and protect his care, comfort, health, and welfare, and did not act in a suitable manner to execute the trust imposed in her as Boydston's guardian. Boydston continues those claims on appeal, arguing that substantial evidence supports removal of the Public Administrator for having violated his rights, the office's duties, and for not acting in his best interests.

Boydston's arguments on appeal and his issues with the circuit court's resolution of the factual issues fail to consider this Court's standard of review on appeal. Boydston relies only upon evidence and inferences contrary to the judgment as support for his argument.

Keeping our standard of review in mind, substantial evidence supports the circuit court's judgment denying Boydston's petition for appointment of successor guardian and conservator and retaining the Public Administrator as Boydston's guardian and conservator. Since 2018, the Public Administrator has acted—and continues to act—in Boydston's best interests. The Public Administrator takes Boydston's opinions into consideration when making decisions, supports Boydston advocating for himself, and coordinates with other family members and medical professionals about Boydston's care. The Public Administrator filed for Social Security disability benefits for Boydston. At the time of the trial, the Public Administrator was working to have Boydston placed at a residential facility for independent or semi-independent supported living. Over the course of the guardianship, the Public Administrator has visited both Mother's

12

and Father's homes multiple times, and it has made decisions on Boydston's behalf that are in his best interests, even when Boydston, Mother, and Father have disagreed with the decisions.

The Public Administrator filed annual reports as required by section 475.082 and has issued directives and updated them to address the changing needs of the family and Boydston. She has implemented a safety plan and a medication and daily hygiene log to address concerns that Boydston was not consistently taking his medication and not regularly showering, brushing his teeth, or wearing clean clothes. The Public Administrator has, although typically not one of her roles, fairly established parenting time between Mother and Father due to the parents' and Grandmother's contentious family dynamics and differences in parenting styles, and has spent a large amount of her time mediating family disputes.

The evidence showed that keeping the Public Administrator as Boydston's guardian and conservator is in his best interests at this time. The circuit court cited to numerous incidents that showed Grandmother and Father manipulate Boydston and that he is easily influenced by them. As the circuit court found, Grandmother testified that she believed Boydston could be left home alone for an extended period of time, that Boydston should not have a guardian, and that he should be able to make his own decisions. This is contrary to the substantial evidence from Boydston's caretakers that he is unable to manage daily living activities, let alone make major decisions.

Substantial evidence supports the circuit court's judgment denying Boydston's petition to appoint Grandmother as his successor guardian and conservator.

Point three is denied.

13

**Point Four**

For his final point, Boydston argues that the circuit court's judgment was against the weight of the evidence in that the judgment omitted "substantial" evidence that the Public Administrator and Mother violated Boydston's rights and did not act in his best interests.

"[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Ivie v. Smith*, 439 S.W.3d 189, 205-06 (Mo. banc 2014) (quoting *In re J.A.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014)). "In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id*. at 206. "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id*.

A party challenging a judgment on an against-the-weight-of-the-evidence challenge must follow a four-step analytical sequence:

> (1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) identify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston*, 317 S.W.3d at 187.

14

Boydston fails to satisfy the first step in the above framework because he does not identify a challenged factual proposition, the existence of which is necessary to sustain the judgment. Assuming that Boydston had challenged a factual proposition necessary to sustain the judgment, Boydston's analysis is once more critically deficient concerning the second and third steps set forth in *Houston*. Boydston references extensive testimony that, according to him, suggests that it would be in his best interest for the circuit court to appoint Grandmother as his successor guardian and conservator, but he ignores and fails to identify the large amount of favorable evidence supporting the circuit court's decision to keep the Public Administrator as his guardian and conservator. Boydston does not explain why that favorable evidence and the reasonable inferences are such that the circuit court could not have reasonably decided to keep the Public Administrator as Boydston's guardian and conservator. Without any of this analysis, Boydston's argument lacks any analytical or persuasive value. *See In re J.A.R.*, 426 S.W.3d at 631 n.12.

Here, Boydston only reargues evidence supporting his position while ignoring all the evidence that supports the circuit court's judgment. Based on this Court's standard of review and the *Houston* requirements, Boydston did not complete the necessary steps to demonstrate the circuit court's judgment leaving the Public Administrator as Boydston's guardian and conservator was against the weight of the evidence. "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Ivie*, 439 S.W.3d at 206.

Boydston cites evidence favorable to his argument that the circuit court should have removed the Public Administrator as guardian and conservator and then points us to the

15

judgment, arguing that it lacks findings with regard to such evidence. "[T]he circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective." *Id.*

For Boydston to succeed on his against-the-weight-of-the-evidence challenge, he needed to provide this Court all the evidence in the record that supported the circuit court's judgment, all the evidence contrary to the circuit court's decision resolving all conflicts in testimony in accordance with the circuit court's credibility determinations, and then demonstrate why the favorable evidence—with the reasonable inferences drawn from that evidence—is so lacking in probative value. *See Harris*, 655 S.W.3d at 40.

Failure to follow the appropriate analytical framework in lodging this challenge makes Boydston's argument useless, his challenge unsupported, "and makes the point subject to dismissal." *Id.* Like point three, however, even if Boydston had conformed his arguments to the correct analytical framework, his claim would fail. The record demonstrates that the judgment is not against the weight of the evidence.

For the same reasons that substantial evidence exists supporting the circuit court's judgment as we discussed *supra* under our resolution of Boydston's third point on appeal, the judgment is not against the weight of the evidence. The circuit court considered all of the evidence Boydston brings before us in his brief.

The power to set aside a circuit court's judgment on the ground that it is against the weight of the evidence should be exercised with caution and only when we have a firm belief that the judgment is wrong. *Searcy v. Seedorff*, 8 S.W.3d 113, 116 (Mo. banc 1999); *Hark v. Hark*, 567 S.W.3d 671, 679 (Mo. App. E.D. 2019). We are not left with the firm belief that the circuit court's judgment is wrong.

Point four is denied.

## Conclusion

The circuit court's judgment is affirmed.[5]

_Janet Sutton_
Janet Sutton, Judge

W. Douglas Thomson, P.J., and Karen King Mitchell, J. concur.

---

[5] Drummond's motion to strike Boydston's brief and dismiss the appeal is denied. Boydston's motion to strike Drummond's statement of facts is denied.